924 P.2d 1386

**Gertrude DRAKE, Plaintiff–Appellee/Cross–Appellant,**

v.

**Ricky TRUJILLO, Defendant–Appellant/Cross–Appellee.**

No. 16,529.

Court of Appeals of New Mexico.

Sept. 13, 1996.

David Graham, Law Firm of David Graham, Taos, NM, for Plaintiff–Appellee/Cross–Appellant.

Thomas A. Simons, IV, Robert D. Sckalor, Simons, Cuddy & Friedman, L.L.P., Santa Fe, NM, for Defendant–Appellant/Cross–Appellee.

## *OPINION*

PICKARD, Judge.

1. This appeal and cross-appeal concern a negligence action. Defendant appeals the district court's grant of a new trial to Plaintiff after the first trial resulted in a verdict for Defendant. Defendant also appeals the district court's award of costs to Plaintiff when the judgment for Plaintiff in the second trial did not exceed the amount of an offer of judgment Defendant made before the first trial. Plaintiff cross-appeals the district court's denial of her tendered res ipsa loquitur instruction. We affirm.

### *FACTS*

2. Plaintiff and Defendant were involved in a car accident. They were travelling in opposite directions when a truck driven by Roy Robinson (Robinson) suddenly pulled in front of Defendant. Defendant swerved to avoid hitting Robinson, but collided with Plaintiff instead. A trial on the merits was set for September 27, 1993, which was a Monday. Plaintiff settled her separate suit against Robinson before trial.

3. Pursuant to NMRA 1996, 1–068, Defendant made an offer of judgment to Plaintiff for $25,000.00. Defendant served the offer via facsimile and via overnight courier on September 15, 1993. *See* NMRA 1996, LR8–106(B). Plaintiff moved to strike the offer as non-compliant with the provisions of NMRA 1–068 and therefore ineffective. The district court took Plaintiff's motion to strike under advisement, but did not make a ruling.

4. Plaintiff submitted a res ipsa loquitur instruction based on NMUJI 1996, 13–1623, which the district court refused to give to the jury. Defendant tendered NMUJI 1996, 13–1617, explaining the sudden-emergency doctrine. The district court submitted NMUJI 13–1617 to the jury over Plaintiff's objection.

5. On September 30, 1993, the jury returned a verdict for Defendant, and on October 13, the district court entered its judgment in favor of Defendant and against Plaintiff on October 13, 1993. On October 22, 1993, the New Mexico Supreme Court announced its decision in *Dunleavy v. Miller,* 116 N.M. 353, 862 P.2d 1212 (1993), discontinuing the sudden-emergency jury instruction. On October 25, 1993, Plaintiff filed a motion for a new trial based in part on the Supreme Court's decision in *Dunleavy.* Defendant submitted a bill totalling $5,353.53 for costs incurred after Plaintiff refused Defendant's offer of judgment. *See* NMRA 1–068 (defendant may collect costs of litigation if plaintiff's award at trial is less than the offer of judgment).

6. The district court granted Plaintiff's motion for a new trial, finding that the Supreme Court's rationale for withdrawing NMUJI 13–1617 in *Dunleavy* supported a new trial. Before commencement of the second trial, Plaintiff attempted to settle by

tendering an acceptance of the terms of Defendant's offer of judgment made prior to the first trial. However, the district court ruled that Plaintiff's acceptance was untimely.

7. The second trial resulted in a verdict of $50,000.00 for Plaintiff. However, the jury found that Defendant was only 6% liable, and Plaintiff's award was accordingly reduced to $3,000.00. Defendant submitted a bill of costs for $9,607.02 as costs for both trials. The district court entered judgment of $3,000.00 for Plaintiff, and also awarded Plaintiff $10,105.15 for costs in the second trial.

## DISCUSSION

### New Trial

8. The decision whether to grant a new trial lies within the sound discretion of the trial court, and the reviewing court will not reverse absent a manifest abuse of discretion. *Martinez v. Ponderosa Prods., Inc.,* 108 N.M. 385, 386, 772 P.2d 1308, 1309 (Ct. App.1988), *cert. denied,* 108 N.M. 273, 771 P.2d 981 (1989). An abuse of discretion occurs when the trial court's decision exceeds the bounds of reason, all the circumstances before it being considered. *Id.* For the purpose of this opinion, we assume that a trial court will abuse its discretion if it grants a new trial when the original trial was completely free of any error. *See State v. Danek,* 118 N.M. 8, 11, 878 P.2d 326, 329 (1994).

9. Defendant submits that NMUJI 13–1617 was good law when it was given by the district court to the jury in the first trial. Because the facts warranted application of the instruction at the time of trial, Defendant argues that he had a right to rely on the prior law and the district court had an obligation to give the instruction to the jury. *See Thompson Drilling, Inc. v. Romig,* 105 N.M. 701, 705, 736 P.2d 979, 983 (1987) (party is entitled to have jury instructed on a legal theory that is supported by the evidence).

10. Defendant protests that the district court abused its discretion when it granted a new trial by applying the *Dunleavy* holding to a case that had been decided 22 days before the *Dunleavy* holding was announced. Defendant points to the language of *Dunleavy* as indicating that the Supreme Court envisioned only prospective application:

> We hold that UJI Civil 1617 is inconsistent with the philosophy of our Uniform Jury Instructions; that the sudden emergency doctrine underlying the instruction is unnecessary, potentially confusing to the jury, and conducive to overemphasizing one party's theory of the case; and that, accordingly, UJI Civil 1617 should *no longer* be used in instructing the jury in a negligence case.

*Id.* at 354, 862 P.2d at 1213 (emphasis added). Defendant submits that the phrase "no longer" implies that the Supreme Court envisioned purely prospective application or at least application only to cases tried after the date of the *Dunleavy* decision. Defendant relies on two other cases abolishing the use of uniform jury instructions on grounds similar to those used in *Dunleavy—Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1971), and *Delgado v. Alexander,* 84 N.M. 456, 504 P.2d 1089 (Ct.App.1972), *aff'd,* 84 N.M. 717, 507 P.2d 778 (1973). In *Williamson,* the Supreme Court said, "This holding is applicable to all cases tried hereafter." 83 N.M. at 341, 491 P.2d at 1152. In *Delgado,* this Court said that the particular instruction at issue "shall no longer be given. These changes apply to all cases tried hereafter." 84 N.M. at 460, 504 P.2d at 1093. Our task is to determine whether the words "no longer" indicate that the Court intended only limited retrospective application of the *Dunleavy* holding in the same manner as in *Williamson* or *Delgado.*

11. We point out that this is not a case in which the issue is whether to apply the *Dunleavy* rule prospectively or retrospectively. The application of a newly announced rule to cases pending in the district courts and not yet tried is a retroactive application because the new rule is being applied to cases involving conduct occurring before the new rule was formulated. *See Beavers v. Johnson*

*Controls World Servs., Inc.,* 118 N.M. 391, 392, 881 P.2d 1376, 1377 (1994) (implying that retroactivity occurs when the newly announced rule applies to conduct occurring before its announcement). Thus, the issue, appropriately framed, is what type of retrospective application (or selective or modified prospective application) is proper for this case? *See id.* at 397 n. 7, 881 P.2d at 1382 n. 7 (discussing modified or selective prospectivity).

12. Prior to *Beavers,* New Mexico courts have utilized a variety of approaches in applying newly announced rules of law. *Maxwell v. Ross Hyden Motors, Inc.,* 104 N.M. 470, 471–72, 722 P.2d 1192, 1193–94 (Ct.App. 1986). Although *Beavers* adopted a presumption of retrospectivity, it did not address the situation of the case that is tried to final judgment and fully appealed without being reversed prior to the adoption of the new rule. *See Navajo Freight Lines, Inc. v. Baldonado,* 90 N.M. 264, 266, 562 P.2d 497, 499 (1977) (holding that even under retrospective analysis, new rule would not apply to such cases). Defendant's contention is that, because his case was tried to conclusion properly under the law in effect at the time the case was tried, his situation is the same as the example discussed in *Navajo Freight Lines, Inc.* We disagree and analyze this case in a manner similar to that utilized by the courts in attempting to determine whether to give a new rule prospective or retrospective application.

13. Prior to *Beavers,* the law was that where the higher court decision creates new law or overrules old law, but does not address the retroactive effect of the decision, the lower court may draw its own conclusion on retroactivity using appropriate guidelines. *Whenry v. Whenry,* 98 N.M. 737, 739, 652 P.2d 1188, 1190 (1982). In deciding the type of application that is appropriate, a court must look at each case individually, looking at the prior history of the rule in question, considering its purpose and effect, and determining whether retrospective application will further or retard its operation. *Lopez v. Maez,* 98 N.M. 625, 632, 651 P.2d 1269, 1276

(1982). If the new law imposes significant new duties and conditions and takes away previously existing rights, then the law should be applied prospectively. *Id.; Whenry,* 98 N.M. at 739, 652 P.2d at 1190 (quoting *Chevron Oil v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971)).

14. In the case at bar, discontinuance of NMUJI 13–1617 did not impose significant new duties or conditions, nor did it take away any previously existing rights. As our Supreme Court explained in *Dunleavy,* once New Mexico had adopted comparative negligence principles, the instruction placed undue emphasis on the "reasonable person under the circumstances" prong in negligence analysis. *Id.* at 357–59, 862 P.2d at 1216–18. The Court determined that the instruction directed the jury's attention to one of the circumstances, the emergency, to be considered in evaluating the reasonableness of the actor's behavior. *Id.*

15. In *Williamson* and *Delgado,* the application of the new doctrine was actually retroactive in that the time of trial, rather than the time of the offending conduct, was considered to be governing. Modern cases attempting to follow the *Williamson* and *Delgado* framework for application of new doctrine have refined the framework so that the time of trial is not the only benchmark. Cases like *Duffey v. Consavage,* 106 N.M. 372, 374, 743 P.2d 128, 130 (Ct.App.1987), and *Maxwell,* 104 N.M. at 472, 722 P.2d at 1194, follow the lead of the seminal case of *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), in which the Supreme Court held that its adoption of comparative negligence would be applicable in all cases filed after the date of the opinion, as well as in all cases pending in both the trial and appellate courts in which the issue was preserved.

16. Thus, for example in *Duffey,* this Court held that the parental immunity doctrine was outmoded and unproductive. 106 N.M. at 374, 743 P.2d at 130. This Court considered the nature of the case and the equities involved and applied the Supreme Court's decision overruling parental immuni-

ty to the case at bar, all similar pending actions, and all cases which may arise in the future. *See also Navajo Freight Lines, Inc.,* 90 N.M. at 265, 562 P.2d at 498.

17. In its ruling on Plaintiff's motion, the district court said:

> The present case was still pending at the time that [*Dunleavy*] was decided, and while it was up on appeal, for that matter. Therefore, for the reason[] that the jury instruction sudden emergency is no longer to be considered an applicable instruction in New Mexico, the Court will grant the motion for new trial in this case.

The district court had discretion to consider Plaintiff's argument that the jury may have been confused by the instruction. It was reasonable for the district court to determine that the arguments supporting discontinuance of NMUJI 13–1617 in *Dunleavy* justified limited retrospective application of the *Dunleavy* holding in a new trial for Plaintiff in the interests of justice.

 18. The court's decision was reasonable under the circumstances of this case in which the issue was raised by Plaintiff's objection to the instruction during the first trial. Although Defendant's brief contends, without citation to the record or transcript, that Plaintiff did not object to the giving of the instruction during the first trial, Plaintiff's brief notes that an objection was made, and the notation "object DG" on the instruction contained in the record proper further indicates that Plaintiff's counsel objected to the sudden-emergency instruction. In any event, it is Defendant's burden, as the appellant, to bring to this Court a sufficient record to demonstrate the validity of his contentions and to cite to the pertinent portions of the record in his brief. NMRA1996, 12–213(A)(3); *Reeves v. Wimberly,* 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988). Defendant did not place before this Court a transcript of the first trial, showing any objection or lack thereof, to the sudden-emergency instruction. Therefore, even if the notation in the record proper was in error, we would indulge in the presumption that

Plaintiff properly objected to the instruction. *Id.* at 236, 755 P.2d at 80.

19. Under the framework of *Scott v. Rizzo* and its progeny, had Plaintiff not moved for a new trial and instead appealed, this Court would have reversed because the issue was properly preserved. Because the district court retains jurisdiction to rule on timely motions for new trial after the entry of judgment in a case, the case at bar was effectively still pending in the district court when the *Dunleavy* holding was announced. *See* NMRA1996, 1–059(B) (motion for new trial must be served within ten days of judgment); NMRA1996, 1–006(A) (last day not included when it is a weekend). Thus, the trial court's grant of a new trial was consistent with modern cases articulating modified retrospectivity for most issues. Accordingly, it was not an abuse of discretion. *See Martinez,* 108 N.M. at 386, 772 P.2d at 1309.

### Award Of Costs

 20. The rules of civil procedure provide for costs to be awarded to the prevailing party in litigation as a matter of course. *Mascarenas v. Jaramillo,* 111 N.M. 410, 415, 806 P.2d 59, 64 (1991). However, a defendant may recover post-offer costs if the judgment ultimately recovered by a plaintiff is not more favorable than the offer. *Dunleavy,* 116 N.M. at 361, 862 P.2d at 1220. NMRA 1–068 provides in pertinent part:

> At any time more than ten (10) days before the trial begins, [the defendant] may serve upon the [plaintiff] an offer to allow judgment to be taken against him . . . with costs then accrued. If within ten (10) days after the service of the offer the [plaintiff] serves written notice that the offer is accepted, . . . judgment may be entered. . . . An offer not accepted shall be deemed withdrawn. . . . If the judgment finally obtained by the [plaintiff] is not more favorable than the offer, the [plaintiff] must pay the costs incurred after the making of the offer.

Time, for the purpose of this case filed before the effective date of the 1995 amendments, is

computed according to NMRA 1–006 without the exclusions for periods of less than eleven days. If the last day of the period lands on a Saturday, Sunday, or legal holiday, the plaintiff shall have until the end of the next regular business day to decide whether or not to accept the offer. *See id.* We think the only sensible way to read NMRA 1–068 is to read the first and second sentences together.

21. In the instant case, Defendant served the offer of judgment on September 15, 1993. This was twelve days before the scheduled start of the trial on September 27, 1993. However, in order to comply with the terms of both NMRA 1–068 and NMRA 1–006, Defendant needed to serve Plaintiff so that the final day of the offer period did not fall on Saturday, Sunday, or a legal holiday, and was at least one day before trial. Plaintiff would thus have had the requisite allotted time in which to decide whether to accept or reject the offer.

22. Because the tenth day of the offer of judgment period fell on a Saturday, Plaintiff had until the end of the day on the following Monday, September 27, 1993, according to NMRA 1–006. The trial started in the morning on September 27. Defendant's attempted offer of judgment to Plaintiff was not sufficiently in advance of the trial to allow Plaintiff to respond before trial and was therefore untimely. Because Defendant's offer of judgment to Plaintiff was untimely, Plaintiff's subsequent attempt to accept the offer was properly rejected by the district court. The fact of its untimeliness rendered Defendant's offer of judgment not effective under NMRA 1–068. Therefore, the cost shifting provision of NMRA 1–068 does not apply.

*Res Ipsa Loquitur*

23. In her cross-appeal, Plaintiff protests the district court's refusal to instruct the jury according to the doctrine of res ipsa loquitur. We are unpersuaded by Plaintiff's arguments and affirm the district court.

24. The doctrine of res ipsa loquitur applies only when, in the ordinary course of events, an injury would not occur except by the negligence of the person in exclusive control and management of the injuring instrumentality. *Romero v. Truchas Mut. Domestic Water Consumer & Mut. Sewage Works Ass'n*, 121 N.M. 71, 74, 908 P.2d 764, 767 (Ct.App.), *cert. denied*, 120 N.M. 828, 907 P.2d 1009 (1995). The doctrine permits the inference of negligence on the part of a defendant under certain conditions. *Id.* at 75, 908 P.2d at 768.

25. However, the mere fact that an accident occurred is not grounds for concluding that a particular defendant was probably negligent. *See Martinez v. Teague*, 96 N.M. 446, 449, 631 P.2d 1314, 1317 (Ct.App.1981). For res ipsa loquitur to apply, there must be facts that lead to a reasonable and logical inference that the defendant was negligent. *Id.* at 450, 631 P.2d at 1318. As our Supreme Court said in *Tipton v. Texaco, Inc.*, 103 N.M. 689, 712 P.2d 1351 (1985):

> In the instant case, ... inferences of negligence arising from control and injury not otherwise occurring in absence of negligence are unnecessary crutches to reach the issues of negligence. Under the evidence, questions of negligence of several parties were undeniably raised, and reliance on the res ipsa doctrine was not plaintiff's only recourse.

*Id.* at 698, 712 P.2d at 1360.

26. The evidence in the case at bar raised questions of negligence on the part of at least two parties. *See id.* Plaintiff had recourse not only against Defendant, but also against Robinson. Thus, there was no reason to apply res ipsa loquitur to excuse Plaintiff from showing causation, nor was it appropriate to shift the burden to Defendant to show that he was not negligent. Plaintiff settled her case against Robinson, and the jury in the second trial—based on the evidence presented—found Robinson's negligence to have been the primary cause of the chain of events

leading to the accident. Plaintiff was not entitled to an instruction on res ipsa loquitur, and the proffered instruction was properly rejected by the district court.

*CONCLUSION*

27. We affirm the district court.

28. **IT IS SO ORDERED.**

APODACA, C.J., and ALARID, J., concur.