**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOY L. MARTINEZ, individually, as personal representative of Louis J. Martinez, deceased, and as mother and next friend of Kevin Joseph Martinez and Mariah Nicole Martinez, minors,

Plaintiff - Appellant,

v.

CO2 SERVICES, INC.,

Defendant - Appellee.

No. 00-2218
(D.C. No. CIV-99-33 JC/DJS)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **PORFILIO** , and **LUCERO** , Circuit Judges.

In this diversity case, plaintiff appeals the district court's entry of summary

judgment in favor of defendant on her claims for wrongful death under New

Mexico law. [1]  Our jurisdiction arises under 28 U.S.C. § 1291.  We affirm.

---

\* The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P.  34(a)(2) and 10th Cir. R. 34.1(G).  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Because the district court's jurisdiction is based upon diversity of

(continued...)

# I. Background

Plaintiff Joy L. Martinez is the surviving spouse of Louis J. Martinez, who was an employee of the New Mexico State Highway and Transportation Department. On November 4, 1998, Martinez was working in a construction zone on the eastbound side of Interstate 40 in Albuquerque, New Mexico. At the time, traffic was restricted to the right-hand lane of the three-lane highway, and the construction zone was cordoned off by orange barrels and other warning devices. While working in the construction zone, Martinez was hit by a semi-tractor trailer operated by Donald D. Mullins. The truck had been traveling in the right-hand lane of the highway when Mullins lost control of the vehicle and veered left across the two closed lanes of traffic into the emergency lane where Martinez was working. The truck was owned by defendant CO2 Services, Inc., and Mullins was acting within the course and scope of his employment with defendant at the time of the accident. Martinez sustained fatal injuries in the accident and died on November 11, 1998.

---

[1](...continued)
citizenship under 28 U.S.C. § 1332(a)(1), we must apply state law to the substantive issues on this appeal. See Peck v. Horrocks Eng'rs, Inc., 106 F.3d 949, 952 (10th Cir. 1997). The district court applied New Mexico law to plaintiff's substantive claims, and the parties have not challenged the applicability of New Mexico law on appeal.

Upon arriving at the accident scene, rescue personnel found Mullins dead inside the truck. An autopsy was subsequently performed, and it was determined that the cause of Mullins's death was ventricular fibrillation of the heart resulting in sudden cardiac arrest. The autopsy revealed that Mullins had suffered from two underlying cardiac illnesses: dilated cardiomyopathy with hypertrophy, or thickening, of both the right and left ventricles, and significant coronary artery disease with major obstruction of the coronary arteries. Prior to the accident, neither Mullins nor defendant had any knowledge that Mullins suffered from heart problems of any kind.

## II. Plaintiff's Claims

Plaintiff has asserted claims for wrongful death under New Mexico law against defendant on behalf of herself and her and Martinez's two minor children. Plaintiff has alleged both vicarious liability under the doctrine of respondeat superior and direct liability. According to plaintiff, defendant is vicariously liable under the doctrine of respondeat superior for: (1) the presumed negligence of Mullins in causing the accident as established under the doctrine of res ipsa loquitur (Count 2 of plaintiff's first amended complaint); [2] (2) Mullins's

---

[2]    In Count 2 of her first amended complaint, plaintiff asserted the doctrine of res ipsa loquitur as a separate claim for relief. As the district court found, however, res ipsa loquitur is not a separate tort. Instead, "[r]es ipsa loquitur describes a set of conditions to be met before an inference of negligence may be

(continued...)

negligence in falling asleep while driving the truck through the construction zone (Counts 1 and 3 of plaintiff's first amended complaint); and (3) Mullins's negligence in failing to wear a seat belt (Count 5 of plaintiff's first amended complaint). As a matter of direct liability, plaintiff alleges that defendant is liable for negligently hiring Mullins and for negligently entrusting the truck to Mullins (Count 4 of plaintiff's first amended complaint).

A. Vicarious Liability/Respondeat Superior

Plaintiff alleges that because Mullins was in exclusive control of the truck and the accident was of a type that would not ordinarily occur in the absence of some sort of negligence on the part of the driver of the truck, she has made out a prima facie case of Mullins's negligence under the doctrine of res ipsa loquitur. As a result, plaintiff claims, she is not required to put forth evidence establishing specific acts of negligence.

Even if the doctrine of res ipsa loquitur does not apply, plaintiff alleges, there is sufficient evidence to establish that Mullins fell asleep at the wheel while driving the truck through the construction zone. According to plaintiff, Mullins was thereby negligent in operating the truck, because he knew or should have known that he had an increased risk of falling asleep while driving. Under this

---

[2](...continued)
drawn." Mireles v. Broderick, 872 P.2d 863, 866 (N.M. 1994).

-4-

theory, plaintiff does not dispute the findings in the autopsy report that the cause of Mullins's death was ventricular fibrillation of the heart resulting in sudden cardiac arrest. Instead, plaintiff disputes whether it was the sudden cardiac arrest that caused Mullins to lose control of the truck in the first place. Plaintiff's theory is that (1) Mullins suffered from sleep apnea; [3] (2) as a result of fatigue associated with sleep apnea, Mullins fell asleep while driving the truck through the construction zone; (3) Mullins then lost control of the truck and the truck swerved to the left striking Martinez; and (4) at some point after he fell asleep, Mullins suffered a sleep apnea episode whereupon he stopped breathing and went into ventricular fibrillation as a result of a combination of a lack of oxygen and his underlying cardiac illnesses. [4]

As an alternative theory of both causation and liability, plaintiff alleges that Mullins was not wearing a seatbelt at the time of the accident as required by 49 C.F.R. § 392.16 and that his negligent failure to wear a seat belt was a proximate

---

[3]    Sleep apnea is a disorder in which breathing during sleep stops for ten seconds or longer, usually more than twenty times an hour, causing measurable blood deoxygenation. See The Merck Manual, § 14 at 1415 (17th ed.).

[4]    In support of her sleep apnea claim, plaintiff has submitted medical records and questionnaires indicating that Mullins had been diagnosed with severe obstructive sleep apnea in 1996 and that he had complained of daytime fatigue in the past as a result of his sleep apnea.

cause of the accident. [5] Under this theory, even if Mullins did suffer sudden cardiac arrest before he lost control of the truck, plaintiff alleges that the use of a seatbelt would have restrained Mullins's body after he became incapacitated and that this would have prevented the truck from suddenly veering to the left and striking Martinez.

B. Direct Liability

As a basis for imposing direct liability on defendant, plaintiff alleges that defendant knew or should have known that Mullins suffered from fatigue as a result of his sleep apnea. According to plaintiff, defendant therefore knew or should have known that Mullins was at an increased risk of falling asleep while driving, and defendant is directly liable for negligently hiring Mullins and for negligently entrusting the truck to him. Under this theory, plaintiff assumes that the accident sequence was triggered by Mullins's falling asleep at the wheel.

### III. Defendant's Motion for Summary Judgment

Defendant filed motions for summary judgment on each of plaintiff's claims. In opposition to those motions, plaintiff submitted affidavits from two expert witnesses. First, plaintiff submitted an affidavit from Barry W. Ramo, M.D. Ramo is board-certified in internal medicine with subspecialties in

---

[5]     49 C.F.R. § 392.16 provides that "[a] commercial motor vehicle which has a seat belt assembly installed at the driver's seat shall not be driven unless the driver has properly restrained himself/herself with the seat belt assembly."

-6-

cardiovascular disease and electrophysiology. In his affidavit, Ramo set forth the

following opinions:

> [1] Mullins' sleep apnea, combined with his two forms of heart disease, could have triggered his death.
>
> [2] Mullins' death was due to ventricular fibrillation caused by the composite effects of coronary heart disease, dilated hypertrophic cardiomyopathy, and obstructive sleep apnea.
>
> [3] It is impossible to tell whether the ventricular fibrillation occurred before or after Mullins' truck crossed the highway and collided with Mr. Louis J. Martinez.
>
> [4] Mullins may very well have fallen asleep at the wheel and that caused him to lose control, crossing the highway and running into the wall.

(Appellant's App. at 112–13.) Ramo also addressed the causation issues in a

written report dated June 21, 1999. In his report, Ramo concluded as follows:

> The patient's obstructive sleep apnea could have been a factor. He may very well have fallen asleep at the wheel and that caused him to lose control, crossing the highway and running into the wall. He may then have developed fibrillation and died. It is impossible to tell whether the ventricular fibrillation occurred before or after he crossed the highway and collided with Mr. Louis J. Martinez or after the collision.

(Id. at 116.)

Second, plaintiff submitted an affidavit from Richard Seligman, M.D.

Seligman is board certified in internal medicine, pulmonary medicine, critical care

medicine, and sleep disorders with training in hyperbaric medicine. In his

affidavit, Seligman offered the following opinions:

Mullins' sleep study, in addition to documenting severe obstructive sleep apnea syndrome also documented dramatic and profound hypoxemia or desaturation during untreated sleep. The circumstances appear to suggest at least the likelihood that the patient may have fallen asleep at the wheel to explain the movements of the truck at the accident scene as well as the physical findings. The findings of the rescue squad of biventricular fibrillation during Mr. Mullins' attempted resuscitation are consistent with the above suggestion.

(Id. at 118.)

In its memorandum opinion and order dated June 21, 2000, the district court granted defendant summary judgment on each of plaintiff's claims. First, the district court found that the doctrine of res ipsa loquitur was inapplicable, since Mullins's alleged negligence was not the only plausible explanation for his losing control of the truck. Second, the court found that the opinions of plaintiff's experts were speculative and that there was insufficient evidence in the record to support plaintiff's claim that the proximate cause of the accident was Mullins's falling asleep at the wheel as a result of fatigue related to his sleep apnea. Third, the court found that plaintiff failed to put forth sufficient evidence to support her claim that a proximate cause of the accident was Mullins's failure to wear a seatbelt. For the reasons set forth below, we affirm the district court's entry of summary judgment in favor of defendant.

A. Standard of Review

"We review the grant . . . of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c)." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quotation omitted). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quotation omitted). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Id. (quotation omitted).

Although questions of fact are generally left for the jury to decide, "[s]ummary judgment is . . . appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "In essence, the inquiry for the Court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson, 477 U.S. at 251–52).

To be entitled to summary judgment, defendant is not required to disprove plaintiff's claims. "While [defendant] bears the burden of showing the absence of a genuine issue of material fact, [defendant] need not negate [plaintiff's] claim, but need only point to an absence of evidence to support [plaintiff's] claim." Kaul, 83 F.3d at 1212 (quotation omitted). "If [defendant] carries this initial burden, [plaintiff] may not rest upon [her] pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof." Id.

Because the party opposing a motion for summary judgment must set forth "specific facts" to defeat the motion, Fed. R. Civ. P. 56(e), "[u]nsupported conclusory allegations . . . do not create a genuine issue of fact." L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000). A conclusory affidavit from an expert witness is therefore insufficient to defeat summary judgment. Matthiesen v. Banc One Mortgage Corp., 173 F.3d 1242, 1247 (10th Cir. 1999). Similarly, mere speculation unsupported by evidence is insufficient to resist summary judgment. Peterson v. Shanks, 149 F.3d 1140, 1144–45 (10th Cir. 1998).

B. Res Ipsa Loquitur

Under New Mexico law, "[t]he doctrine of res ipsa loquitur applies only when, in the ordinary course of events, an injury would not occur except by the

-10-

negligence of the person in exclusive control and management of the injuring instrumentality." Drake v. Trujillo, 924 P.2d 1386, 1391 (N.M. Ct. App. 1996). [6] The ordinary course of events may be established by expert testimony, lay evidence, or common knowledge. Mireles v. Broderick, 872 P.2d 863, 866 (N.M. 1994). "However, the mere fact that an accident occurred is not grounds for concluding that a particular defendant was probably negligent." Drake, 924 P.2d at 1391. Instead, "[f]or res ipsa loquitur to apply, there must be facts that lead to a reasonable and logical inference that the defendant was negligent." Id.

Plaintiff alleges that she has established a prima facie case of Mullins's negligence under the doctrine of res ipsa loquitur and that this fact precluded summary judgment in favor of defendant. We disagree. As the district court found, this is not a case in which the accident could not have occurred except through the negligence of the driver. To the contrary, there is an equally plausible explanation that the accident was caused by the unforeseeable event of Mullins's going into cardiac arrest. Under this scenario, there is no liability for negligence, because a sudden and unforeseeable loss of physical capacity or consciousness is a complete defense to a claim of negligence. See McCall v.

---

[6] Effective August 1, 1999, the doctrine of res ipsa loquitur was retitled "circumstantial evidence of negligence" in the New Mexico uniform jury instructions. See N.M. Supreme Court Order No. 99-8300 (copy attached to Appellant's App. at 30–32). However, no substantive changes were made to the doctrine.

Wilder, 913 S.W.2d 150, 154–55 (Tenn. 1995) (citing case law from twenty-six jurisdictions in support of conclusion that majority rule "is to accept as a defense the sudden loss of physical capacity or consciousness while driving provided that the loss of capacity or consciousness was unforeseeable"). [7] The mere fact that the accident occurred is not sufficient grounds for concluding that Mullins was probably negligent, and the doctrine of res ipsa loquitur is therefore inapplicable. See Drake, 924 P.2d at 1391. [8]

In his affidavit, Seligman asserts that the circumstances of the accident support an inference that Mullins may have fallen asleep at the wheel. However, Seligman's opinion is insufficient to establish that "in the ordinary course of

[7] Although we have been unable to locate a decision of the New Mexico Supreme Court addressing this issue, we believe the New Mexico Supreme Court would follow the majority approach as outlined in McCall. See Adams-Arapahoe Sch. Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 871 (10th Cir. 1992) (in the absence of authoritative precedent from a state's highest court, this court must predict how the state court would rule on the issue at hand).

[8] Relying on Paddock v. Schuelke, 473 P.2d 373 (N.M. Ct. App. 1970), plaintiff also argues that a presumption of negligence arises, either as a matter of negligence per se or res ipsa loquitur, when an accident results from the illegal operation of a vehicle on the wrong side of the road. While this may be the rule in cases where there is no other reasonable explanation for the accident except the negligence of the driver whose vehicle crossed over to the wrong side of the road, we decline to apply this rule where, as here, there is an equally plausible explanation for the accident that is not dependent on a finding that the driver was negligent. We also note that the court in Paddock expressly found that there was no other "reasonable contradictory inference" regarding the cause of the head-on collision at issue in the case other than the negligence of the driver of the car in crossing into the wrong lane of traffic and colliding with the oncoming truck. Id. at 379.

-12-

events, [the] injury would not [have] occur[red] except by the negligence of [Mullins]." Drake, 924 P.2d at 1391. Specifically, Seligman has not ruled out other possible causes of the accident and has therefore failed to establish a probability that the accident occurred as a result of Mullins's negligence. See Mireles, 872 P.2d at 866 (holding that while a foundation for an inference of negligence under the doctrine of res ipsa loquitur may be based on the testimony of an expert witness, the expert's testimony must establish "that [the] occurrence indicates the probability of negligence"). Plaintiff's claim that the accident could only have resulted from Mullins's negligence is also severely undercut by Ramo's opinion that it is impossible to determine whether Mullins went into cardiac arrest before or after the truck crossed into the construction zone.

C. Sleep Apnea Claim

Plaintiff alleges that she has established a prima facie case of negligence based upon the opinions of her medical experts that the accident may have been caused by Mullins's falling asleep at the wheel as a result of fatigue associated with sleep apnea. The district court found that the opinions of plaintiff's experts "are based on a number of assumptions which Plaintiff is unable to establish through anything other than speculation." Martinez v. CO2 Servs, Inc., No. CIV 99-0033 JC/DJS, slip op. at 7 (D. N.M. June 21, 2000). We agree. Most importantly, plaintiff's experts failed to set forth specific facts to support their

-13-

assumption that Mullins fell asleep at the wheel; [9] Ramo admits that it is impossible to determine whether Mullins suffered the ventricular fibrillation before or after the truck crossed into the construction zone; and neither of plaintiff's experts has testified to a reasonable degree of medical probability. At best, therefore, plaintiff's experts have only established a possibility that the accident was caused by Mullins's falling asleep, and this is insufficient to defeat defendant's motion for summary judgment. [10] See Matthiesen, 173 F.3d at 1247; Higgins v. Martin Marietta Corp., 752 F.2d 492, 496 (10th Cir. 1985) ("When dealing with an issue of medical causation, a considered medical judgment is necessary, expressed in terms of probability rather than possibility"). Accordingly, plaintiff has presented insufficient evidence for a jury to return a verdict in her favor on her sleep apnea claim, and summary judgment was

---

[9] Plaintiff admits in her opening brief that there is no direct evidence that Mullins fell asleep. Ramo also admitted at his deposition that he has no factual information to support his assumption that Mullins fell asleep, and he only testified that this is "one possibility." (Appellant's App. at 343, 414.) Similarly, with respect to the issue of whether Mullins's ventricular fibrillation was triggered by a sleep apnea episode after he fell asleep, Seligman only testified that this was a possibility.

[10] The failure of plaintiff's experts to expressly elevate their opinions above mere possibilities is best exemplified by the ambiguous statement of Seligman that "[t]he circumstances appear to suggest at least the likelihood that the patient may have fallen asleep at the wheel . . ." (Appellant's App. at 118 (emphasis added).) Likewise, Ramo was only able to conclude that Mullins's "sleep apnea could have been a factor" and that he "may very well have fallen asleep at the wheel . . ." (Id. at 113, 116 (emphasis added).)

therefore appropriate on Counts 1 and 3 of plaintiff's first amended complaint.
See Biester, 77 F.3d at 1266.

D.  Negligent Hiring and Negligent Entrustment

Plaintiff alleges that defendant was negligent in hiring Mullins and in entrusting a company truck to him because defendant knew or should have known that Mullins suffered from sleep apnea and was at an increased risk of falling asleep on the job while driving. [11] As the district court noted, in order to survive summary judgment on either of these claims, plaintiff must establish a prima facie case that the proximate cause of the accident was the negligent act of Mullins in falling asleep at the wheel. See DeMatteo v. Simon, 812 P.2d 361, 363 (N.M. Ct. App. 1991) (holding that to recover on claim of negligent entrustment, plaintiff must establish that (1) defendant entrusted its vehicle to the entrustee; (2) defendant knew or should have known that the entrustee was an incompetent driver; and (3) the entrustee's incompetence caused the injury at issue); Valdez v. Warner, 742 P.2d 517, 520 (N.M. Ct. App. 1987) (holding that for a plaintiff to recover on claim of negligent hiring, the negligent hiring of the employee must have been the proximate cause of the injury at issue).  As set forth above,

---

[11]  There is no evidence in the record indicating that defendant knew or should have known that Mullins had heart problems or was at risk of suffering a fatal ventricular fibrillation.  As a result, plaintiff has based her negligent entrustment and hiring claims solely on the evidence regarding Mullins's sleep apnea and his alleged susceptibility to falling asleep while driving.

plaintiff's evidence indicates only that it is possible that Mullins fell asleep at the wheel as a result of his sleep apnea. This is not sufficient to establish the requisite prima facie case of causation to support plaintiff's negligent hiring and entrustment claims. Summary judgment on Count 4 in plaintiff's first amended complaint was therefore proper.

E. Seatbelt Claim

Plaintiff claims she has established a prima facie case that Mullins's failure to wear a seatbelt was a proximate cause of the truck's swerving into the construction zone after he became incapacitated. We disagree.

Even if we accept plaintiff's allegation that Mullins was not wearing a seatbelt as true, we agree with the district court that plaintiff has failed to provide sufficient evidence to establish that the accident would not have occurred but for his failure to wear a seatbelt. [12] Consequently, at best, plaintiff has only established a possibility that the accident was caused by Mullins's failure to wear

---

[12] We also agree with district court that there is insufficient evidence to support a finding of negligence on plaintiff's seatbelt claim under the doctrine of res ipsa loquitur. As the district court found, there are a number of other reasonable inferences that could explain why the truck suddenly veered off course after Mullins lost consciousness. Mullins's failure to wear a seat belt is only one possible explanation.

-16-

a seatbelt.  Accordingly, we affirm the district court's entry of summary judgment on Count 5 of plaintiff's first amended complaint. [13]

The judgment of the United States District Court is **AFFIRMED** .

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[13]     Because we agree with the district court that plaintiff's seat belt claim fails on the issue of proximate cause, we do not need to determine whether 49 C.F.R. § 392.16 imposed a duty on Mullins towards Martinez.