2002-NMCA-040

44 P.3d 530

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jaime PEREZ, Defendant–Appellant.**

**No. 21,894.**

Court of Appeals of New Mexico.

Feb. 19, 2002.

Certiorari Denied, No. 27,422,
April 5, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steve Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} jury found Defendant Jaime Perez guilty of five counts of accessory to criminal sexual penetration (CSP), two counts of battery, and one count of intimidation of a witness. Defendant was sixteen at the time of the events for which he was convicted. The trial court found Defendant to be a youthful offender not amenable to treatment and sentenced him based on that status. Defendant appeals his accessory to CSP convictions and youthful offender status. We affirm in part, reverse in part, and remand for re-sentencing.

## BACKGROUND

{2} We set forth the facts in accordance with the principle of resolving all conflicts and making all inferences in favor of the State as the prevailing party. *State v. Coffin*, 1999–NMSC–038, ¶ 73, 128 N.M. 192, 991 P.2d 477.

{3} Vernon and Jeremy, both juveniles, ran away from Jackson, Tennessee. They ended up in a juvenile detention center in New Mexico, assigned to the same cell. At first they got along fairly well with the other boys in the center, but the atmosphere changed. Defendant's co-defendant, Michael, and another center resident, Noel, began calling the runaways racist names such as "cracker" and "honky." Next, Michael and Noel told the runaways to either clean their cells for them or perform fellatio on them. The runaways refused, even though Noel slapped Vernon. Similar additional

threats were made to the runaways later in the day.

{4} The next day Defendant was admitted to the center. Vernon was again told to clean cells or perform fellatio. Defendant joined in the intimidation, threatening that if Vernon did not perform fellatio on Noel and Michael he would have to "do everyone else in the jail." Vernon perceived the other residents "kinda acted like [Defendant] was the boss, in a way." Asked to explain, he said, "Well, they weren't mean to him, they were always around him, you know, and he was, like, sayin', tellin' 'em all kinds of stuff, just talkin' to 'em."

{5} Vernon testified that the more he refused, the angrier the others became. "When I went back into the hallway, [Defendant] like came and he pushed me. He said that I had to do it—I had to suck their penises. And if I—He said he's already killed somebody. It won't matter if he kills me." Michael also threatened to kill Vernon and Jeremy if they did not cooperate, or alternatively, threatened to either stab them thirteen times or "shove a broomstick up our butt."

{6} Vernon and Jeremy did not want to get killed so they complied with the demands. Vernon performed fellatio on Michael and Noel in Noel's cell while the cell door was covered with a sheet. (It was customary for the residents to cover their cell door when they wanted to use the toilet.)

{7} Jeremy testified Defendant and Michael told him "I was goin' to have to do the same thing [fellatio] to two [other] guys." He did so in one of the cells. A resident named Manuel was also in the cell. A sheet covered the door, but there was a hole in the sheet approximately six inches in diameter. Vernon looked through the hole "to see if they were going to make [Jeremy] do it." Vernon looked briefly and then "turned away, because I didn't want to look any more." Defendant was also watching. "He was like right beside me lookin' in the hole," reported Vernon. Defendant said something, but Vernon was not paying attention to what he said.

{8} Defendant went back to the sundeck area (the common area). He told Vernon that Vernon ought to perform fellatio on him, too, but that Vernon did not have to since he had done the other two boys. Michael and Defendant threatened the boys with violence if they told anyone about the fellatio. Vernon said the rest of the day was uneventful, until he was hit hard during a "slap game" after dinner. The next day after breakfast there was a nose-pinching "game," resulting in severe bruising. This was followed by attempts to strangle Vernon and Jeremy. Vernon passed out for a few moments. When a female officer came in for laundry he asked to speak to her and told her what had happened. The runaways were then put in a safer place. The boys told her they had been threatened that if they did not perform fellatio they would be stabbed thirteen times or killed. Two other center residents, Paul and Andrew, testified they committed fellatio with Jeremy. Paul testified it was Noel's idea, not Defendant's. Andrew testified "they" told the boys what to do, but he could not remember any of "their" names.

{9} The jury found Defendant guilty on five counts of accessory to CSP. The court found Defendant was not amenable to treatment as a juvenile and sentenced him as an adult to forty-seven and one-half years in the New Mexico Department of Corrections.

## DISCUSSION

### Defendant's Status as a Youthful Offender

{10} Defendant contends he was not a youthful offender under NMSA 1978, § 32A–2–3(I) (1996), because accessory to CSP is not one of the listed offenses that qualifies one as a youthful offender. Therefore, Defendant reasons, he could not be sentenced as an adult. Answering this question requires us to construe the statute that defines juvenile youthful offenders. We review this issue of statutory interpretation de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{11} Initially we note this issue was not raised in the trial court. Generally we do not consider questions on which the trial court had no opportunity to rule. *See* Rule 12–216(A) NMRA 2002; *see also State v. Varela*, 1999–NMSC–045, ¶ 26, 128 N.M. 454,

993 P.2d 1280 (explaining that in order to preserve an issue for appeal, the defendant must alert the court to claimed error and invoke intelligent ruling). However, a trial court lacks jurisdiction to impose an illegal sentence. *State v. Martinez,* 1998–NMSC–023, ¶ 12, 126 N.M. 39, 966 P.2d 747 ("A trial court's power to sentence is derived exclusively from statute."). If Defendant was wrongfully determined to be a youthful offender, his sentence would be illegal. The issue is one of subject matter jurisdiction, which cannot be waived and can be raised at any time. *State v. Davis,* 1998–NMCA–148, ¶ 9, 126 N.M. 297, 968 P.2d 808. We therefore address the issue.

{12} Section 32A–2–3(I) defines a "youthful offender" as:

a delinquent child subject to adult or juvenile sanctions who is:

(1) fourteen to eighteen years of age at the time of the offense and who is adjudicated for at least one of the following offenses:

(a) second degree murder, as provided in Section 30–2–1–NMSA 1978;

(b) assault with intent to commit a violent felony, as provided in Section 30–3–3 NMSA 1978;

(c) kidnapping, as provided in Section 30–4–1 NMSA 1978;

(d) aggravated battery, as provided in Subsection C of Section 30–3–5 NMSA 1978;

(e) aggravated battery upon a peace officer, as provided in Subsection C of Section 30–22–25 NMSA 1978;

(f) shooting at a dwelling or occupied building or shooting at or from a motor vehicle, as provided in Section 30–3–8 NMSA 1978;

(g) dangerous use of explosives, as provided in Section 30–7–5 NMSA 1978;

(h) criminal sexual penetration, as provided in Section 30–9–11 NMSA 1978;

(i) robbery, as provided in Section 30–16–2 NMSA 1978;

(j) aggravated burglary, as provided in Section 30–16–4 NMSA 1978;

(k) aggravated arson, as provided in Section 30–17–6 NMSA 1978; or

(*l*) abuse of a child that results in great bodily harm or death to the child, as provided in Section 30–6–1 NMSA 1978;

(2) fourteen to eighteen years of age at the time of the offense and adjudicated for any felony offense and who has had three prior, separate felony adjudications within a three-year time period immediately preceding the instant offense. The felony adjudications relied upon as prior adjudications shall not have arisen out of the same transaction or occurrence or series of events related in time and location. Successful completion of consent decrees are not considered a prior adjudication for the purposes of this paragraph; or

(3) fourteen years of age and adjudicated for first degree murder, as provided in Section 30–2–1 NMSA 1978.

{13} It is not clear whether the trial court determined Defendant was a youthful offender because of the nature of his crime (Section 32A–2–3(I)(1)) or because of his violent history (Section 32A–2–3(I)(2)) or both. At the hearing on the motion for reconsideration of the sentence, the court said,

Yes. Forty-seven and one-half years is a long time. But the crimes that he committed and the length of his record is long also and it involves violence. It involves death. It involves violating people's bodies. I cannot see how I could do anything else, and that's why I entered the sentence.

Although the court's comments indicate Defendant has a lengthy history of trouble with the law, the record does not reveal whether Defendant had "three prior, separate felony adjudications within a three-year time period immediately preceding the instant offense" so as to qualify him as a youthful offender under Section 32A–2–3(I)(2). We therefore consider whether Defendant was a youthful offender because of the nature of his crime under Section 32A–2–3(I)(1).

{14} Section 32A–2–3(I)(1) lists specific crimes which confer youthful offender status. CSP is listed. § 32A–2–3(I)(1)(h). Defendant points out that the statute is silent as to whether accessories to the listed offenses are also youthful offenders. He argues the stat-

ute unambiguously excludes accessories, relying on *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990), which states "[w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."

{15} In interpreting legislative silence, we look to the Children's Code as a whole and to the purposes of the youthful offender provisions. *See N.M. Dep't of Health v. Compton*, 2001–NMSC–032, ¶ 18, 131 N.M. 204, 34 P.3d 593. Further, we presume the Legislature knows the law. *State v. McClendon*, 2001–NMSC–023, ¶ 10, 130 N.M. 551, 28 P.3d 1092.

■ {16} It is black-letter law that accessories have the same level of guilt as principals and are punished the same as the principals. *State v. Carrasco*, 1997–NMSC–047, ¶ 6, 124 N.M. 64, 946 P.2d 1075. "Aiding and abetting is not a distinct offense and it carries the same punishment as a principal." *Id.*

{17} The purpose of the Delinquency Act, NMSA 1978, §§ 32A–2–1 to –33 (1993, as amended through 1999), is "consistent with the protection of the public interest, to remove from children committing delinquent acts the adult consequences of criminal behavior," while still holding young offenders "accountable for their actions to the extent of [each] child's age, education, mental and physical condition, background and all other relevant factors." § 32A–2–2. Further, the Delinquency Act proposes to "provide [both] a program of supervision, care and rehabilitation" and "effective deterrents to acts of juvenile delinquency, [with] an emphasis on community-based alternatives." *Id.* "The code intend[s] the court to tailor a disposition to the specific needs of a child," remaining cognizant of the public interest. *In re Ruben D.*, 2001–NMCA–006, ¶ 11, 130 N.M. 110, 18 P.3d 1063; *see also State v. Cody R.*, 113 N.M. 140, 144, 823 P.2d 940, 944 (Ct.App. 1991) (approving court's disposition as "consistent with the child's best interests, the interests of the child's family, and the interests of the public").

{18} The purposes of the Children's Code are reflected in the statute providing for disposition of youthful offenders. "The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender." § 32A–2–20(A). The court may impose juvenile sanctions in an effort to rehabilitate the child. If successful, this would clearly be in the best interests of the child and of society. Conversely, if the court determines that rehabilitation of the juvenile is unlikely, the court has the discretion to protect the public by imposing an adult sentence.

■ {19} Construing the definition of youthful offender in the context of the Children's Code and the law of accessory liability, we conclude the Legislature intended that juveniles adjudicated to be accessories to CSP be punished in the same way as juveniles adjudicated to have committed CSP. We hold that juveniles who are accessories to CSP are youthful offenders. Section 32A–2–20 gives the court discretion whether to impose a juvenile sanction or, if certain requirements are met, an adult sentence. Defendant makes no claim that the requirements for an adult sentence were not met in his case.

## Defendant's Conviction as Accessory to an Accessory

{20} The fourth count for accessory to CSP charged that Defendant "did procure, counsel, aid or abet Manuel to force Jeremy (a minor) to commit fellatio." The evidence pertaining to Manuel was that Jeremy testified that Manuel told him "they" wanted Jeremy to come into Manuel's cell. Jeremy performed fellatio on Paul and Andrew in Manuel's cell while Manuel was present. Paul testified that Manuel said he was there to see if Paul "was going to do it." In his statement to the investigator, Paul said Defendant and Noel "told [Manuel] to go and make sure Andrew and Paul got their dicks sucked." Andrew testified that Manuel put a blanket over the door of his cell before the fellatio with Jeremy.

■ {21} The Legislature has defined accessory liability:

A person may be charged with and convicted of the crime as an accessory if he

procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or has been acquitted, or is a child under the Children's Code.

NMSA 1978, § 30–1–13 (1972). CSP is defined as "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse ..., whether or not there is any emission." NMSA 1978, § 30–9–11(A) (2001). "The natural reading of that language is that a person engages in one of the four listed acts if that person is one of the two persons required for the performance of the act." *State v. Delgado,* 112 N.M. 335, 337, 815 P.2d 631, 633 (Ct.App.1991) (construing earlier version of statute).

{22} Manuel was not one of the two persons required for the act in any of the incidents. He was himself at most an accessory to CSP and not one of the four perpetrators. *See id.* Defendant argues his conviction under the fourth count was improper because he was convicted of being an accessory to an accessory, i.e., to Manuel.

{23} We agree. Section 30–1–13 is written in terms of the accessory assisting the principal. It reads too much into the statute to define another accessory, Manuel, as a "principal" for purposes of convicting Defendant of the crime of being an accessory to Manuel. "[A] statute defining criminal conduct must be strictly construed." *Santillanes v. State,* 115 N.M. 215, 221, 849 P.2d 358, 364 (1993). The State gives us no reason why we should not apply this maxim here. If it wanted to pursue Defendant as a ringleader it could have attempted prosecution under other statutes. *See* NMSA 1978, § 30–28–2 (1979) (conspiracy); NMSA 1978, § 30–28–3 (1979) (criminal solicitation). We reverse the conviction under the fourth count as too attenuated.

### Sufficiency of the Evidence

{24} Defendant argues he was convicted of accessory to CSP based solely on the victims' groundless opinion that he was the ringleader. We construe this to be an argument that there was insufficient evidence to convict him of accessory to CSP.

{25} The jury was instructed that, in order to find Defendant guilty of the crime of accessory to CSP, it had to find beyond a reasonable doubt as to each of the counts:

1. The defendant intended that the crime be committed;
2. The crime was committed;
3. The defendant, helped, encouraged or caused the crime to be committed.

The jury was also instructed that the crime of CSP consisted of:

1. A perpetrator, or perpetrators, caused the victim to engage in fellatio;
2. Threats of physical force or physical violence were made against the victim, or another person;
3. The victim believed the threats would be carried out;
4. The perpetrator or perpetrators acted with the help or encouragement of one or more persons;
5. This happened in New Mexico on or about the 23rd of May 1997.

{26} In reviewing a challenge to the sufficiency of the evidence, we construe the evidence and make all inferences to support the verdict. *Coffin,* 1999–NMSC–038, ¶ 73, 128 N.M. 192, 991 P.2d 477. Both victims testified that Defendant ordered them to perform fellatio on specific people and threatened them with grave bodily harm if they did not. There was evidence that Defendant assisted in creating the atmosphere of intimidation which convinced the victims that the threats would be carried out. This was ample evidence that Defendant helped or encouraged the CSP whether or not the jury considered he was the ringleader. We recognize there was contradictory evidence. It was for the jury to decide which evidence to believe. *State v. Foxen,* 2001–NMCA–061, ¶ 17, 130 N.M. 670, 29 P.3d 1071.

{27} Defendant maintains there was no evidence that he "encouraged any specific criminal act." Defendant ignores the testi-

mony that he specifically told Vernon to perform fellatio on Noel and Michael and that he told Jeremy to do the same to two other residents. Defendant watched Jeremy through a hole in a sheet. The jury could have decided this conduct sufficiently encouraged and assisted the perpetrators to perform the specific acts that were performed.

{28} Defendant argues that his acts did not constitute "active encouragement" because he was not cheering on the perpetrators or physically assisting them during the acts, but did what he could to disassociate himself from the crimes by going to the common area. Defendant relies on *State v. Walker*, 116 N.M. 546, 547, 865 P.2d 1190, 1191 (1993) (Montgomery, J., specially concurring), in which the defendant witnessed sex acts between her minor daughter and several men, and on one occasion participated with her; *State v. Orosco*, 113 N.M. 789, 792, 833 P.2d 1155, 1158 (Ct.App.1991), *aff'd*, 113 N.M. 780, 833 P.2d 1146 (1992), in which there was testimony that the defendant, while babysitting his girlfriend's son, held the child's head while the defendant's friend attempted to have oral sex with the child; and *State v. Barnett*, 85 N.M. 404, 406, 512 P.2d 977, 979 (Ct.App.1973), in which the defendant saw another threaten the rape victim with the defendant's knife, raped the victim himself, saw others sexually abuse the victim, and saw the victim be recaptured after an attempt to escape.

{29} We see two problems with Defendant's analysis. First, the jury was not required to accept Defendant's interpretation of the events that he was only a bystander and did what he could to distance himself. *See Foxen*, 2001–NMCA–061, ¶ 17, 130 N.M. 670, 29 P.3d 1071. Second, we do not believe either the jury instruction or Section 30–1–13 requires the type of assistance described in the cases Defendant cites. The jury need only find Defendant "helped, encouraged or caused the crime to be committed." Defendant's assistance was not required to rise to the level of physically restraining the victims, providing a weapon to intimidate them, or violating some independent duty of protection owed to the victims. We hold there was

sufficient evidence to support Defendant's remaining convictions for accessory to CSP.

## Due Process and Double Jeopardy Principles

{30} Defendant asserts his convictions violate due process and double jeopardy principles. Defendant does not articulate a separate due process argument, but relies on *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991), which describes factors determinative of whether separate and distinct acts of criminal sexual penetration have occurred for purposes of double jeopardy.

{31} Defendant also argues he had but a single criminal intent, namely, to harass the runaways. He cites *State v. LeFebre*, 2001–NMCA–009, ¶ 15, 130 N.M. 130, 19 P.3d 825, in which we reversed one of the defendant's two convictions for evading an officer, on the grounds that the defendant had only a single criminal intent, no matter how many officers he evaded. In *LeFebre* we held not only that the defendant's intent was unitary, but that his conduct was unitary as well. *Id.* ¶¶ 17–18. Here, there were two victims and four perpetrators.

{32} *Herron* does not help Defendant. Nor does *LeFebre*. Defendant's conduct was not unitary. Moreover, the jury was required to find and it found that Defendant intended to commit each of the separate specific offenses with which he was charged. Defendant has neither a factual nor a legal basis for his claim of double jeopardy.

## Ineffective Assistance of Counsel

{33} The defense called Mike Bennett, a private investigator hired to investigate on behalf of co-defendant Michael. Defendant contends he received ineffective assistance of counsel when his attorney failed to object to Bennett's testimony about a witness's prior inconsistent statement or to move for separate trials at that point. Defendant's own counsel asked a few questions, then passed the witness to Michael's counsel.

{34} Bennett interviewed both Vernon and Jeremy in the presence of the prosecutor. Without objection, Bennett identified certain inconsistencies in the victims' trial

testimony. Bennett also interviewed Andrew and Paul. In his statement, Andrew said everyone got along all right afterwards and the victims joked about the incidents. The victims talked about the lawsuit they planned to file against the county. Paul said Vernon and Jeremy seemed to be happy when he saw them after the incidents and they joked about what had happened.

{35} On cross-examination Bennett admitted that his report stated that Andrew felt Jeremy participated because he was scared and was being threatened by Michael, Defendant, and Noel. His report also stated that Andrew said "[Defendant] told Jeremy he would kick his ass if he didn't do it."

{36} The following cross-examination concerned Bennett's report of his interview with Paul:

> Prosecutor: Now, as to Paul's statement. Apparently he didn't say anything to implicate [Michael], but did he not say, regarding the oral sex incident, Paul said he really didn't—I think you mean didn't want to do it but was scared of [Defendant] and Noel. [Defendant] and Noel stayed outside the cell in the common area and told [Manuel] to go and make sure Andrew and Paul got their dicks sucked.
> Bennett: Yes sir.
> Prosecutor: And, did he also not state, at that time, [Defendant] was mostly telling everyone what to do about getting their dicks sucked. Paul said he didn't want to but he was scared about what might happen to him if he didn't, this being retaliation mostly from [Defendant]. Is that all in the report as well?
> Bennett: Yes sir.

Bennett admitted that, according to his report, Paul said it was Defendant who had started the talk about having Vernon and Jeremy perform fellatio. Defendant characterizes Bennett's testimony as "the sole piece of evidence on which the jury could have convicted him." Paul's inconsistent statements were not the sole piece of evidence on which the jury could have convicted Defendant. We have explained why there was sufficient evidence to convict Defendant without even considering Bennett's testimony. To show ineffective assistance of counsel,

Defendant must demonstrate that his counsel's performance fell below that of a reasonably competent attorney and that he was prejudiced by his counsel's deficient performance. *State v. Hester*, 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729.

{37} Moreover, we do not agree that defense counsel's performance fell below that of a reasonably competent attorney. Counsel may have thought it was worth the risk of having Paul's inconsistent statements put before the jury to get in evidence that the victims were joking about the incidents. The jury was instructed that to convict Defendant of accessory to CSP it had to find that threats of physical force were made against the victims and the victims believed these threats. Counsel may have reasoned that the jury would disbelieve the victims' testimony about feeling forced by the threats of physical violence to participate in the fellatio if it believed that afterwards the victims were joking about the incidents, or if they believed the victims' testimony was motivated by the desire to prevail in a civil suit against the county. In the cool light of hindsight this may not seem to be the best of tactics, but, of course, "[b]ad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel." *State v. Orona*, 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982). We hold Defendant did not receive ineffective assistance of counsel.

### Cruel and Unusual Punishment

{38} Defendant maintains it was cruel and unusual punishment to give him an adult sentence of forty-seven and one-half years for a crime he committed as a juvenile when the evidence against him was so slight and tenuous and when his co-defendant, one of the actual perpetrators, was given a juvenile disposition.

{39} The evidence against Defendant was sufficient to convict him as an accessory to CSP. The trial court then considered whether Defendant was amenable to treatment or rehabilitation as a child in available facilities, or eligible for commitment for treatment to an institution for the developmentally disabled or mentally disordered.

The court determined he was not. If Defendant's co-defendant was given a juvenile disposition, the court must have concluded that co-defendant was amenable to rehabilitation or eligible for commitment, making his situation different from Defendant's.

{40} Defendant was given a legal sentence. "It is the Legislature's province to set penalties for crimes and only in exceptional circumstances will the court invade this province." *State v. Rueda,* 1999–NMCA–033, ¶ 16, 126 N.M. 738, 975 P.2d 351. We do not find Defendant's sentence to be one of those exceptional circumstances which are so shocking to the conscience or so unfair as to constitute cruel and unusual punishment. *See State v. Ira,* 2002–NMCA–037, ¶ 32, 132 N.M. 8, 43 P.3d 359 (2002) (expressing concern about our rigid statutory scheme that does not permit the trial court flexible sentencing alternatives for juveniles treated as adults); *Rueda,* 1999–NMCA–033, ¶ 16, 126 N.M. 738, 975 P.2d 351.

**Constitutionality of Section 32A–2–20**

{41} Defendant argues that Section 32A–2–20, under which the court determines amenability to treatment as a juvenile, is unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We reject this argument for the same reasons we did in *State v. Gonzales,* 2001–NMCA–025, 130 N.M. 341, 24 P.3d 776.

**CONCLUSION**

{42} We reverse Defendant's conviction under count four for CSP, accessory to Manuel, affirm Defendant's remaining convictions, and remand for re-sentencing consistent with this opinion.

{43} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and CYNTHIA A. FRY, Judge.