2004-NMCA-086

94 P.3d 854

STATE of New Mexico, Petitioner–
Appellee,

v.

STEVEN B., Respondent–Appellant.

State of New Mexico, Petitioner–
Appellee,

v.

Gabriel C., Respondent–Appellant.

State of New Mexico, Petitioner–
Appellee,

v.

Gerald L., Respondent–Appellant.

State of New Mexico, Petitioner–
Appellee,

v.

Matthew S., Respondent–Appellant.

No. 23771, 23747, 23509, 23741.

Court of Appeals of New Mexico.

May 27, 2004.

Certiorari Denied, No. 28,775,
July 8, 2004.

Patricia A. Madrid, Attorney General, Santa Fe, M. Victoria Wilson, Assistant Attorney General, Albuquerque, for Appellee.

John B. Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, for Appellants.

## *OPINION*

CASTILLO, Judge.

{1} In this opinion, we consolidate four appeals brought individually by Steven B., Gabriel C., Gerald L., and Matthew S. (children), challenging the Grade Court program (grade court) operated by the children's court in San Juan County. Because children did not preserve the issue of whether grade court as a whole is authorized by the Children's Code, NMSA 1978, §§ 32A–1–1 to – 21–7 (1993, as amended through 1999) (Code), we confine our opinion to the narrow issue of whether the Code authorizes the children's court to order detention for violation of grade court. We also determine that one child, Gabriel, did not preserve two additional issues, concerning his guilty plea and the length of his probation. We affirm the orders of detention entered by the children's court for all four children.

## I. BACKGROUND

{2} We detail each child's individual facts in our discussion of each case. All children, however, have certain facts in common: Each child pled guilty to a criminal offense. Each was subsequently ordered by then

Judge Paul R. Onuska to participate in grade court as a condition of release, pending sentencing; Steven and Gabriel were later placed on probation with grade court included in their conditions of probation. Each child signed the same form detailing the grade court conditions; the form is entitled Grade Court Order Setting Conditions of Probation/Release (grade court order).

{3} The grade court order sets the following conditions:

1. *24 HOUR HOUSE ARREST*—To ensure that you are supervised and do not get in any more trouble. You can attend school, work, participate in clubs, sports or activities if supervised by a coach, boss, or sponsor. You can be out only if you are with your parents or an adult they have approved of.

2. *PARENTS ARE PARTY RESPONDENT*—This means that the Court acknowledges how important it is for the parent/guardian to participate in order to make Grade Court work...

Parenting/Support classes are required.

. . . .

3. *RELEASE OF INFORMATION*—Student and parents/guardian shall execute a release of information allowing the school personnel to share information with Grade Court staff, the Court, or Juvenile Probation Officers. The reason for this is to make sure that all parties are all fully informed. It also allows Grade Court staff to share information with school staff.

a. CONFIDENTIAL RELEASE OF INFORMATION . . . .

b. ATTENDANCE—Your daily attendance at all classes at school is required. Only absences excused by the school shall be excused by the Grade Court. Truancy of one class will result in 24 hours of detention, more than one class may result in 48 hours of detention or more.

c. DAILY ASSIGNMENT SHEETS—You are required to have daily assignment sheets completed by each teacher in each class. You then take these home and give them to your parents and they are to utilize these in making sure that all assignments and homework is [sic] complete.

d. WEEKLY PROGRESS REPORTS—You are required to get a Weekly Progress Report showing your progress in each class. These are to be brought home and given to your parents. It is the further responsibility of your parents and you to deliver to the Grade Court Officer all assignment sheets for the past week and the weekly progress reports by Friday or Monday of [ ] every week.

e. MINIMUM ONE HOUR STUDY PERIODS . . . .

f. BOOK REPORTS—If all homework is completed or there is no homework, then the one hour study period is to be utilized for reading books. . . . During the summer, you must read a book per week and complete a book report on those books and submit it to the Grade Court Officer on a weekly basis. Or you must participate in the Accelerated Reader Program.

g. GRADE PERFORMANCE—You are expected to receive C's or better. If final grades for a period (either 6 weeks or 9 weeks reporting period) drop below a C, then your parents may be required to attend school with you, from one day up to one week. It is the joint responsibility of you and your parents to succeed in the classroom.

h. RELEASE—C's or better in each class on a report card can get you off of house arrest if the Judge agrees and your parents do not object.

If you get C's on two report cards in a row, you may be released from Grade Court. . . .

4. *READING IMPROVEMENT REQUIREMENTS*—If you are reading below the grade level, then successful completion of a reading program will be necessary. It will be required of your parents and you to coordinate with the Grade Court Officer for the attendance at any approved reading development program here in the coun-

ty or to work with the assigned tutors to improve reading capabilities. Weekly reading progress reports will be required of these efforts . . . .

5. *PARENTING CLASSES* . . . .

6. *APPEARANCES*—All participants in Grade Court are required to attend all Grade Court appearances as set forth by the Court. Grade Court appearances will be at a minimum of one monthly appearance before the Judge who has assigned you to Grade Court. In addition, it is understood that Grade Court appearances may be assigned more frequently depending on the needs of each individual child.

{4} The consequences of failure to follow certain conditions of probation were likewise set out in detail.

**FAILURE TO FOLLOW *GRADE COURT* CONDITIONS OF PROBATION:**

1. *CHILD DOES NOT COMPLETE ANY OF THE CONDITIONS OF PROBATION, i.e., DAILY ASSIGNMENT SHEETS, WEEKLY PROGRESS REPORTS, BOOK REPORTS OR ATTENDANCE AT SCHOOL, FORGING, ALTERING, OR CAUSING MISREPRESENTATION OF INFORMATION:* SUCH CHILD FOR THE FIRST BREACH MAY BE PLACED IN WEEKEND DETENTION AT THE SAN JUAN COUNTY DETENTION CENTER. IF FAILURES CONTINUE TO OCCUR, THE CHILD WILL BE REQUIRED TO CONTINUE WITH WEEKEND DETENTION OR DAILY DETENTION, DEPENDING ON THE SEVERITY OF THE BREACHES. PARENTS MAY BE ORDERED TO ATTEND SCHOOL TO INSURE THAT PROPER REPORTS ARE OBTAINED.

2. *GRADES OF D OR F FOR A FINAL SIX–WEEK OR NINE–WEEK REPORTING PERIOD:* THE CHILD SHALL BE ACCOMPANIED TO SCHOOL FOR A PERIOD OF ONE DAY UP TO ONE WEEK BY HIS/HER PARENT OR PARENTS . . . .

3. *CONTINUED FAILURE IN GRADE PERFORMANCE OR ANY OTHER CONDITION OF GRADE COURT IF NOT ADDRESSED BY THE JUVENILE AND THE PARENTS:* TERMINATION OF PROBATION AND PLACEMENT AT YDDC OR THE BOYS OR GIRLS SCHOOL [ ] CAN RESULT. IF FAILURE TO SUCCESSFULLY COMPLETE *GRADE COURT* AS A RESULT OF ANY LEGITIMATE PSYCHOLOGICAL OR EDUCATIONAL LEARNING DISABILITY, THEN THESE CAUSES WILL BE TAKEN INTO ACCOUNT BY THE COURT. PSYCHOLOGICAL EVALUATIONS AND POSSIBLE PANELING TO RESIDENTIAL TREATMENT CENTERS WILL ALSO BE CONSIDERED AS A POSSIBLE ALTERNATIVE FOR FAILURE TO SUCCESSFULLY COMPLETE *GRADE COURT* REQUIREMENTS.

{5} Signature lines for child, child's parent or guardian, juvenile probation officer or grade court officer, and the children's court judge are contained at the end of the form. Each child, on numerous occasions, violated one or more of these grade court conditions. Consequently, each was ordered detained for specified periods.

## II. DISCUSSION

### A. Preservation

{6} This Court previously considered two other appeals related to grade court where lack of preservation left us unable to review the issue of whether grade court was authorized: *State v. Joanna V.*, 2003–NMCA–100, ¶¶ 7–10, 134 N.M. 232, 75 P.3d 832, *cert. granted on other grounds*, 134 N.M. 179, 74 P.3d 1071 (2003), and *State v. Andrew A.*, No. 22,891, slip op. at 4–5 (N.M.Ct.App. Oct. 7, 2003). *See* Rule 12–216(A) NMRA 2004. We explained the importance of preservation in this Court's ability to meet its primary role of correcting trial error. *Joanna V.*, 2003–NMCA–100, ¶ 7. We stressed that it is not our role to arrive at conclusions without the issues having been raised below. *Id.* To the contrary, it is essential to this Court's

ability to make informed decisions that a party alert the trial court to an alleged error. *Id.* In addition, the preservation rule gives the opposing party a fair opportunity to show the court why it should rule against the objector. *Garcia ex rel. Garcia v. La Farge, M.D.*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995).

■ {7} Lack of preservation continues to plague these grade court appeals. Similar to the approach taken by Joanna and Andrew, each child, on appeal, contends that he was deprived of his right to notice and a hearing on his grade court violations; each child's counsel, however, in the process of appearing and responding to the violations, failed to object to either notice or a hearing. As such, we find the due process arguments are not preserved, and we therefore do not consider them. *See Joanna V.*, 2003–NMCA–100, ¶ 8; *see also State v. Singleton*, 2001–NMCA–054, ¶ 11, 130 N.M. 583, 28 P.3d 1124 (stating that constitutional rights can be waived). Furthermore, we reviewed the transcripts of eight grade court appearances during which detentions were ordered. At six appearances, the children's court expressly asked counsel whether the child wanted a hearing on grade court violations, and counsel specifically declined a hearing. And at the two appearances wherein the children's court did not ask whether the child wanted a hearing on grade court violations, the child's attorney did not request one; nor was an objection made.

{8} Appellate counsel makes arguments in the briefs in chief against the grade court program as a whole. But there were no objections below to grade court when it was included as a condition of release or a condition of probation. Compounding the problem is appellate counsel's failure to address preservation in any of the four briefs in chief she submitted and failure to argue that an exception to preservation applied. Instead, in response to the State's assertion that children did not preserve most of the issues they uniformly raised, appellate counsel insists, in children's reply briefs, that there is not a preservation problem.

{9} In Steven's case, appellate counsel suggests the issue was preserved when the State and Steven "agreed" that the grade court conditions should not be imposed. We find no support in the record for the existence of any such agreement. Consequently, Steven needed to object to the imposition of the grade court conditions of release, which he did not do. In Gabriel's case, appellate counsel suggests preservation through the statements of Gabriel's mother to the children's court; she told the court she did not disagree with grade court but felt Gabriel did not deserve two years of probation. Appellate counsel further asserts that requiring defense counsel to stand up and object to [detention] orders upon speculation that they could occur is a technical application of the preservation rule. We do not consider the comments of Gabriel's mother an objection to grade court; nor do we view the objection requirement as a technicality. In Gerald's case, appellate counsel refers this Court to the objection made to his August 20, 2002, detention. As we discuss in the following paragraph, we agree that only the issue of Gerald's detention for grade court violations was preserved. In Matthew's case, appellate counsel correctly points out that Matthew did object to being placed in custody when he pled guilty on October 9, 2002; Matthew's counsel told the children's court that Matthew did not meet the criteria for detention. Appellate counsel asserts the objection was to the grade court "system in general." We disagree. Matthew was not detained for violation of grade court; he was not assigned to grade court until the next day, when he appeared again before the court. During the court's explanation of grade court to Matthew on October 10, in the presence of Matthew's counsel, no objections to grade court were raised.

{10} Unlike Joanna and Andrew, each child here did ultimately object to the detention component of grade court. Steven and Gabriel objected to detention when it was ordered for failure to conform to grade court conditions of probation; Gerald and Matthew objected to detention imposed for violating grade court conditions of release. Numerous other detentions occurred, however, without objection, although counsel was present and had opportunity to object. In the records

before us, there is no comprehensive explanation of how grade court operates. Similarly, there is no specific objection to the imposition of grade court as a condition of release or that the Code does not authorize this type of rehabilitative program. As a result, there is nothing for this Court to review as relates to the program itself. We determine, therefore, that of the grade court issues raised by all children, the narrow issue preserved is whether the particular detentions objected to were authorized under the Code. *See State v. Reyes*, 2002–NMSC–024, ¶ 41, 132 N.M. 576, 52 P.3d 948 (refusing to address an issue raised for the first time on appeal); *Joanna V.*, 2003–NMCA–100, ¶ 8–10 (declining to review issues not preserved). We discuss the lack of preservation of an additional non-grade court issue unique to Gabriel below.

## B. Standard of Review

■ {11} Since the issue of whether the Code authorized the children's detentions is one of statutory construction, we review it de novo. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 4, 126 N.M. 413, 970 P.2d 599; *Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. Although portions of the Code at issue in these cases were subsequently amended, *see, e.g.,* §§ 32A–2–2 and –2–11, we review the version of the Code in effect during the course of children's proceedings. We examine for abuse of discretion the court's use of its contempt power. *Case v. State*, 103 N.M. 501, 503, 709 P.2d 670, 672 (1985); *Spear v. McDermott*, 121 N.M. 609, 620, 916 P.2d 228, 239 (Ct.App.1996). "[A]n abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances[.]" *State v. Cherryhomes*, 114 N.M. 495, 500, 840 P.2d 1261, 1266 (Ct.App.1992) (first alteration in original) (internal quotation marks and citations omitted).

## C. *Steven B.*

■ {12} On February 1, 2002, Steven pled guilty to two counts of shoplifting. He was ordered released, pending sentencing; the conditions of release included partic-

ipation in grade court. Steven was represented by counsel at the February 1 hearing, during which the children's court explained grade court to Steven. Steven and his father signed both the order of release and the grade court order. The grade court order was signed on February 8, 2002.

{13} At Steven's May 9, 2002, disposition, he was placed on probation for an indeterminate period, not to exceed two years. The probation agreement and order, signed by Steven and his father, also required successful completion of grade court. While the probation agreement did not include another grade court order, we presume from the title of the document and its reference to conditions of probation that the grade court order signed on February 8, 2002, remained in effect.

{14} At Steven's grade court appearance on August 20, 2002, the court ordered him to two weekends of detention for failing to comply with grade court requirements. At the start of the proceeding, Steven's counsel acknowledged that she was aware of the allegations facing Steven. She gave no indication that Steven wanted a hearing on the grade court violations. Steven had previously stopped turning in summer book reports; on the day of his August 20 appearance, he turned in late five of six missing book reports. Steven had admitted to the court at the prior grade court appearance that he had no good reason for not doing the work. He acknowledged on August 20 that a weekend of detention was the sanction for "each time that I mess up." The court was apparently suspicious as to when or whether Steven had actually read the books for which he submitted book reports; upon further questioning of Steven, the court found him in contempt of court. The court ordered him, while in detention, to complete the missing book report and redo the ones submitted. Counsel objected to Steven's being placed in detention without the court's following the probation revocation procedures in Section 32A–2–24.

■ {15} We now turn to the question of whether the court had statutory authority to detain Steven under its contempt power. In doing so, we follow the principles of statutory construction. Our starting point is the

plain language of the statute. We give words their ordinary meaning and refrain from further interpretation where the language is unambiguous. *State v. Javier M.,* 2001–NMSC–030, ¶ 28, 131 N.M. 1, 33 P.3d 1; *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. The Code must be read in its entirety and "each section interpreted so as to correlate as faultlessly as possible with all other sections." *State v. Henry L.,* 109 N.M. 792, 794, 791 P.2d 67, 69 (Ct.App. 1990).

{16} In looking to the plain language of the Code, we disagree with Steven that in order for the children's court to order detention for violation of probation, the court must follow probation revocation procedures. Section 32A–2–24 does not mandate such procedures in all instances. *See* § 32A–2–24(A) ("A child on probation ... who violates a term of the probation *may* be proceeded against in a probation revocation proceeding.") (emphasis added). Nor has Steven provided authority for his proposition that such proceedings are always required before detention can be imposed. We find his reliance on *State v. Henry Don S.,* 109 N.M. 777, 779, 790 P.2d 1058, 1060 (Ct.App.1990) misplaced. In that case, the child's probation was revoked, and the child was committed to Boys' School without the court's having conducted a probation revocation hearing. *Id.* at 778, 790 P.2d at 1059. We deemed the self-executing probation condition of incarceration for truancy impermissible under the Code. *Id.* at 779, 790 P.2d at 1060. Unlike Henry Don's, Steven's probation was not revoked. Instead, Steven was allowed to live at home and remain in the community; he served detentions on the weekends. The specific question we face in this case is whether the children's court may use its contempt power as an alternative to probation revocation to detain a child who is on probation for violation of grade court requirements. That question was not considered in *Henry Don S.*

{17} It is undisputed that the children's court is "vested with broad and inherent powers to accomplish the results contemplated by the [Code]." *In re Doe,* 99

N.M. 517, 520, 660 P.2d 607, 610 (Ct.App. 1983) (internal quotation marks and citation omitted). One of the court's inherent powers is the power of contempt. *See State v. Julia S.,* 104 N.M. 222, 227, 719 P.2d 449, 454 (Ct.App.1986). This power is recognized in the Code, which states in pertinent part that "the court may punish a person for contempt of court for disobeying an order of the court." Section 32A–1–18(C); *In re Doe,* 99 N.M. at 520, 660 P.2d at 610 (stating that the Code "specifically allows the children's court to punish for contempt for disobedience to orders of the court").

{18} Contempt power is not absolute; it is to be used cautiously and sparingly. *See Case,* 103 N.M. at 503, 709 P.2d at 672; *Corliss v. Corliss,* 89 N.M. 235, 239, 549 P.2d 1070, 1074 (1976). We acknowledge that overall, the children's court's contempt power is being used in somewhat unchartered territory; grade court gives the appearance of almost routinizing contempt. In that respect, we are concerned with the potential for the power to be abused. Steven insists that the children's court surpassed its contempt power because the legislature did not give the court authority to detain a child for grade court infractions. Our careful review of the record leads us to conclude that the children's court did not exceed the scope of its contempt power.

{19} The children's court may use its *contempt power to detain a child* if detention furthers the purposes and directives of the Code. *Julia S.,* 104 N.M. at 226–27, 719 P.2d at 453–54 (discussing the legislatively imposed limits of contempt power). Steven argues that "[t]he primary purpose of the Code is ... rehabilitation" and that grade court's emphasis on accountability and deterrence runs counter to that purpose. While rehabilitation is a primary purpose, the portion of the Code pertinent to this case also has as its purpose the provision of "effective deterrents to acts of juvenile delinquency, including an emphasis on community-based alternatives." Section 32A–2–2(B). We find that permitting a child to remain on probation in the community while holding the child accountable through brief detention for violating a condition of probation furthers that

purpose. Furthermore, the legislature gave the children's court broad discretion to impose conditions of probation. *See* 32A–2–19(B)(3) (stating that the court may "place the child on probation under those conditions and limitations as the court may prescribe"); *Henry L.,* 109 N.M. at 794, 791 P.2d at 69 (finding the "language [of Section 32A–2–19(B)(3)] sufficiently expansive to contemplate the imposition of limited detention as a condition of probation") (decided under Section 32–1–34(E)(3) (Repl.Pamp.1989) with identical language to Section 32A–2–19(B)(3)).

{20} We conclude that the children's court had authority under its contempt power to order detentions for Steven on August 20, 2002. We further determine that the court's sentence of two weekends of detention, one for each of two violations, was not an abuse of discretion; the sentence was neither an erroneous conclusion nor clearly against the logic and effect of the facts and circumstances. *See Cherryhomes,* 114 N.M. at 500, 840 P.2d at 1266. Because we find the court properly used its contempt power, we need not address Steven's remaining issues concerning probation revocation.

**D.** *Gabriel C.*

{21} Gabriel pled guilty on February 26, 2002, to accessory to negligent arson. Grade court was made a condition of release, with Gabriel and his parent or guardian signing the grade court order on February 26. At his plea hearing, Gabriel was notified in open court of grade court requirements and the sanctions for noncompliance. After Gabriel was placed on probation, successful completion of grade court was made a condition of probation. As with Steven, another grade court order was not signed, and there is nothing in the record or appellate briefs indicating that the February 26 order did not remain in effect during Gabriel's probation.

{22} At the December 12 grade court appearance, Gabriel and his counsel confirmed that Gabriel understood he faced sanctions. Counsel declined a hearing on the grade court violations, emphasizing to the children's court that Gabriel was not disputing the fact that the violations occurred. In addition, Gabriel told the children's court he understood that by giving up the hearing, he was giving up the right to require the State to prove that the violations occurred; he also said that he had conferred with his attorney and that he willingly waived the hearing. Before ordering detention, the children's court questioned Gabriel about why he had not turned in his book reports; Gabriel responded, "I just didn't do it." For failing to turn in book reports for six weeks and missing grade court appearances, Gabriel was found in contempt of court and was ordered to fifteen days of detention, with release for school and holidays. The children's court also stated that Gabriel was a threat to the community.

{23} The preliminary issue we address is Gabriel's guilty plea. On appeal, Gabriel argues for the first time that the court below should not have accepted his guilty plea because there is no such crime as accessory to negligent arson and, alternatively, because there was insufficient evidence for the offense. Gabriel agreed to the plea in exchange for dismissal of an arson charge. There was no agreement as to sentence; the maximum penalty for the accessory charge was a commitment to the custody of CYFD for a period of two years. During the February 26, 2002, plea hearing, counsel for Gabriel informed the children's court that there existed a basis in fact for the guilty plea. The court then questioned Gabriel. He indicated he had adequate opportunity to go over everything with his attorney; he admitted he helped his friend who had poured gasoline into a bucket and lit the gasoline with a propane bottle. Following the hearing, the children's court approved the plea agreement signed by Gabriel and his attorney. Gabriel was sentenced on May 10, 2002; he was placed on probation for an indeterminate period, not to exceed two years.

{24} Gabriel is unclear as to what remedy he is seeking from this Court; he merely states that he should not have been allowed to plead guilty to a nonexistent crime. By the nature of the argument, we assume that Gabriel wishes to withdraw his guilty plea. A plea agreement may be set aside, upon timely motion, if it is not made

knowingly and voluntarily. *State v. Garcia,* 121 N.M. 544, 547, 915 P.2d 300, 303 (1996); *State v. Herrera,* 2001–NMCA–073, ¶ 25, 131 N.M. 22, 33 P.3d 22. Yet, Gabriel does not suggest these grounds apply. Nor did Gabriel, at any time either before or after sentencing, move to withdraw his plea. While determination of a motion to withdraw a plea is addressed to the sound discretion of the court, *Garcia,* 121 N.M. at 546, 915 P.2d at 302, the defendant must first make such a motion. *Cf. Herrera,* 2001–NMCA–073, ¶¶ 4–5, 12 (recounting motions filed to withdraw guilty plea on premise that an attempt to commit negligent child abuse is not a crime in New Mexico). Gabriel chose not to do so in this case. Nor did Gabriel, in an effort to preserve the issue, otherwise object below to the sentence imposed. *See id.* ¶ 5 (stating the defendant filed a motion to set aside the sentence).

{25} Although vigorously opposing the condition of grade court, Gabriel does not suggest on appeal that his sentence to probation is illegal; illegality could be raised for the first time in this Court. *See State v. Perez,* 2002–NMCA–040, ¶ 11, 132 N.M. 84, 44 P.3d 530. Nor does Gabriel request this Court to review his plea agreement for fundamental error, another exception to preservation. *See State v. Jason F.,* 1998–NMSC–010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (declining to apply the preservation exceptions when they were not argued on appeal). Under these circumstances, we do not reach the issue of Gabriel's plea agreement.

■ {26} Gabriel next contends that there are no facts in the record indicating he "helped, aided, or encouraged" the setting of the fire. *See* UJI 14–2822 NMRA 2004 (listing elements of accessory to a crime). Having been raised for the first time on appeal, the issue is not preserved. *See Cockrell v. Cockrell,* 117 N.M. 321, 323–24, 871 P.2d 977, 979–80 (1994) (holding that the defendant's failure to call the insufficiency of the evidence to the trial court's attention rendered the issue not preserved). Gabriel does not argue that the question is fundamental. *See In re Gabriel M.,* 2002–NMCA–047, ¶ 9, 132 N.M. 124, 45 P.3d 64 (agreeing with the defendant that the question of sufficiency of

the evidence to establish an element of the crime is fundamental and need not be preserved). We therefore do not address the issue. *See Jason F.,* 1998–NMSC–010, ¶ 10. In making this determination, we note that the record indicates that Gabriel entered into his plea knowingly, voluntarily, and with the advice of counsel. In so doing, he received the benefit of dismissal of the charge of arson. As such, he may not now challenge the sufficiency of the evidence. *See Herrera,* 2001–NMCA–073, ¶ 25.

■ {27} Gabriel also appeals the children's court's December 13, 2002, order of detention. He objected at his December 13 grade court appearance that failure to turn in paperwork did not meet the criteria for detention. The criteria for detention under Section 32A–2–11, however, is applicable before disposition; Gabriel was already on probation. On appeal, Gabriel poses an argument identical to Steven's: that the children's court was required to revoke probation before ordering detention. Yet, Gabriel did not raise probation revocation below. *See State v. Varela,* 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that the defendant must specifically alert the trial court of the nature of the claimed error).

{28} Even if the issue had been preserved, however, we concluded above that the children's court may use its contempt power as an alternative to probation revocation when the court places a child in detention for violation of grade court, a condition of probation. We also find that the children's court did not abuse its discretion in ordering Gabriel to detention. There is a factual basis for the detention; Gabriel admitted to violating grade court conditions. There is nothing in the record to suggest the decision to detain was illogical or unreasonable. *See Cherryhomes,* 114 N.M. at 500, 840 P.2d at 1266. We therefore affirm the children's court's use of its contempt power to order detention for Gabriel on December 13, 2002. Having reached this conclusion, we need not address Gabriel's remaining probation revocation arguments.

{29} In a related matter, Gabriel briefly argues, for the first time on appeal, that the children's court unlawfully extended his peri-

od of probation by requiring him to abide by the terms of grade court before he was sentenced. Although Gabriel's argument is somewhat confusing and was not preserved, the issue seems to amount to a contention that the sentence was illegal; we therefore address it. *See Perez*, 2002–NMCA–040, ¶ 11. Section 32A–2–23(B) limits the length of probation to the term of commitment. Gabriel suggests that because he was placed on grade court as a condition of release, he was subjected to a " 'trial run' on probation." He then adds the months of trial probation to his actual probation to conclude the probation period was unlawful. We reject as unfounded Gabriel's characterization of the conditions of release. We find the argument without merit and conclude the probation sentence was not unlawfully extended.

### E. *Gerald L.*

█ {30} Gerald's situation is different from Steven's and Gabriel's in that Gerald was ordered to detention for violating grade court as a condition of release; unlike Steven and Gabriel, Gerald was not yet on probation. On August 6, 2002, he pled guilty to battery on a household member. Gerald signed his plea agreement and the grade court order the same day, grade court's having been made a condition of release.

{31} Gerald was ordered to two weekends of detention for failure to turn in book reports at his second grade court appearance, on August 20, 2002. At the start of the hearing, the children's court asked Gerald's counsel whether a hearing on the grade court violations was requested; she declined a hearing. The children's court also questioned Gerald as to why he had not done the book reports; Gerald responded, "I just wasn't motivated to do it." Counsel objected that the detention did not meet the criteria for detention. The children's court attorney responded that the court's authority for detaining Gerald lies in its contempt power and that grade court is consistent with the criteria for detention. The children's court agreed, without specifying the authority it relied upon. Since, as we discuss below, the children's court has authority to detain children who have been released while awaiting

sentencing under Section 32A–2–13 and since we do not view reliance on contempt power as necessary in this context, we do not consider that power.

{32} Gerald's brief in chief raises identical arguments to those of Steven and Gabriel: that the children's court must revoke probation before ordering detention. Since Gerald was not on probation, we disregard those arguments. However, in his brief, Gerald also states that he could not be detained unless the criteria for detention were met. *See* § 32A–2–11.

{33} The pertinent part of Section 32A–2–11 states that:

A. Unless ordered by the court pursuant to the provisions of the Delinquency Act [this article], a child taken into custody for a delinquent act shall not be placed in detention prior to the court's disposition unless probable cause exists to believe that:

(1) detention of the child is necessary to protect the community;

(2) the child will run away or be taken away so as to be unavailable for proceedings of the court or its officers;

(3) the child will commit injury to others; or

(4) if not detained, the child will cause injury to himself or be subject to injury by others.

B. The criteria for detention in this section shall govern the decisions of all persons responsible for determining whether detention is appropriate prior to the court's disposition.

{34} The State responds that Section 32A–2–11 does not apply to Gerald, since he is already adjudicated delinquent. Instead, the State argues, the court has authority to order detention of Gerald under Section 32A–2–16(F) (permitting the court to defer disposition of a child adjudicated delinquent) and Section 32A–2–16(H) (requiring the court, when deferring disposition, to enter an order for detention or legal custody). Alternatively, the State maintains, authority to detain arises from Section 32A–2–13(F)(3) (permitting the court to set conditions of release that are "reasonably necessary and

consistent" with the criteria for detention, including the condition of requiring the child to return to detention) and Section 32A–2–13(G) (allowing the court to amend conditions of release to return the child to detention for failure to conform to the original conditions imposed).

{35} We disagree with the State that Subsections 32A–2–16(F) and (H) permit the children's court to wholly bypass the criteria for detention. The State is accurate when it says that Section 32A–2–16 does not require the court to consider criteria for detention before entering such an order. However, we read the sections of the Code together so they correlate with each other to the greatest extent possible. *See Henry L.,* 109 N.M. at 794, 791 P.2d at 69. Section 32A–2–13(F)(3) governs conditions of release. It must be read in correlation with Subsections 32A–2–16(F) and (H). *See Henry L.,* 109 N.M. at 794, 791 P.2d at 69. To ignore it would leave children adjudicated but awaiting disposition without statutory protection as to what conditions may be imposed upon their release. We do not believe that the legislature intended such a result. *See Perry v. Williams,* 2003–NMCA–084, ¶ 15, 133 N.M. 844, 70 P.3d 1283 ("[W]e are to exercise caution when asked to read statutes literally. Our aim in applying statutes is to ascertain and conform to what our legislature intended, and in doing so, we reject formalistic and mechanistic interpretations of statutes." (citation omitted)). Once the children's court decided not to detain Gerald after adjudication, Section 32A–2–13(F) applied to the setting of conditions of release.

{36} We do agree with the State that Subsections 32A–2–13(F) and (G), by their plain language, provide the necessary authority for the children's court to detain Gerald. Gerald does not raise these subsections in his brief, preferring to rely solely on Section 32A–2–11. Nevertheless, there is a close relationship between the sections. Specifically, as we stated above, Section 32A–2–13(F)(3) requires that conditions of release be "reasonably necessary and consistent with the criteria for detaining children."

{37} The record, however, reveals that Gerald implicitly agreed that grade court met the requirement of Section 32A–2–13(F) when he assented to the grade court conditions of release. The grade court conditions were laid out in the grade court order he signed on August 6, 2002. We observe that the detention sanction set out in the grade court order, by its terms, applied to violations of conditions of probation and not to conditions of release. However, once Gerald accepted the conditions of release, the court had authority to order detention, based on his failure to comply with those conditions. *See* § 32A–2–13(G). In addition, Gerald received oral notification from the children's court at his plea hearing that detention would result from failure to comply with certain grade court conditions. Gerald's counsel and mother were present at the plea hearing. Gerald repeatedly told the court that he understood the conditions.

{38} Furthermore, when Gerald signed the plea agreement and grade court order, he received the considerable benefit of being released into the community. Gerald now seeks to be relieved of the conditions of release while leaving the rest of the plea agreement intact. Having received the benefit of the plea, Gerald may not now complain that the conditions are invalid. *Cf. State v. Trujillo,* 117 N.M. 769, 772, 877 P.2d 575, 578 (1994) (recognizing that "both parties to a plea bargain make various concessions and gain certain advantages during plea negotiations" and underscoring that "a criminal defendant, having availed himself of the advantages of a plea agreement, cannot welch on his part of the bargain" (internal quotation marks and citation omitted)); *Herrera,* 2001–NMCA–073, ¶ 25 (stating that once a plea agreement was entered into knowingly and voluntarily, the defendant waived any challenge to its validity based on insufficiency of the evidence); *Gibson,* 96 N.M. at 743, 634 P.2d at 1295 ("Defendant may not be relieved of a part of his plea bargain without giving up benefits he received in the bargain.").

{39} In addition, the record does not leave this Court the ability to conduct an adequate review of whether grade court is "reasonably necessary and consistent with the criteria" for detention. Section 32A–2–13(F)(3). At the August 20 grade court ap-

pearance, at which detention was ordered, Gerald's counsel objected that his violation of grade court is "not one of the criteria for detention as enumerated in [Section 32A–2–11], because he's not a flight risk, not a danger to himself or to the community, by not turning in his book reports." Completing book reports is one aspect of grade court; counsel did not object to or make a record of how grade court as a whole is inconsistent with the criteria and consequently poses invalid conditions of release. *See Drake v. Trujillo*, 122 N.M. 374, 378, 924 P.2d 1386, 1390 (Ct.App.1996) (stating that it is the appellant's burden "to bring to this Court a sufficient record to demonstrate the validity of his contentions"); *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (determining that the insufficient factual record precluded appellate review). Gerald did include the "Grade Court Manual" as part of the record on appeal. Yet, without his arguments below as to the lack of consistency, the manual by itself does not supply this Court with a sufficient record. *See id.* Accordingly, we affirm the children's court's August 20, 2002, order of detention.

### F. *Matthew S.*

{40} Like Gabriel, Matthew was ordered to detention for violating conditions of release. Matthew pled guilty on October 9, 2002, to negligent use of a deadly weapon. He was represented by counsel at the plea hearing; his mother was also present at the hearing. The order of release signed that same day by Matthew and his mother contained a condition that he maintain house arrest with 24–hour adult supervision. The order of release included numerous other conditions, such as reporting weekly to the probation officer and obtaining the probation officer's approval before spending a night away from the custodian's home. In addition to the order of release, Matthew signed the grade court order on October 18, 2002. The grade court order also required house arrest. As stated previously, in our discussion of Gerald's grade court order, the detention sanctions in the order applied to violations of probation. However, Matthew received oral notification from the bench on October 10, 2002, about the possibility of detention for failure to comply with certain grade court conditions.

{41} At the December 10, 2002, grade court appearance, Matthew's counsel declined a hearing on the grade court violations that had occurred. Matthew confirmed with the court that he understood that he had a right to a hearing and that he faced detention for the violations. Matthew's father told the children's court that Matthew had been consistently violating house arrest. Matthew admitted to the children's court that he had violated house arrest, had not attended school for several weeks, and had been turning in forged paperwork. The court then ordered release to be revoked for violation of house arrest, defrauding the court, and missing school.

{42} Matthew's counsel objected to detention, arguing that the conditions of release did not fit the criteria for detention. Counsel asserted that Matthew is "not a danger to himself. Forging paperwork is not a dangerous act. Neither is not going to school. And it's not a danger to others. He is not a flight risk. He hasn't left the jurisdiction and has been really good about coming to grade court. And he's not a danger to the community." Counsel further argued that if the imposed conditions of release do not accord with the criteria for detention, then those conditions must be revoked. The children's court attorney responded that the court is entitled under the Code to impose reasonable conditions of release that ensure the child's future appearances in court and that are likely to protect the child and the community. Conditions such as house arrest and school attendance, the children's court attorney maintained, are such reasonable conditions. The court ultimately concluded that Matthew was a danger to both the community and himself.

{43} Like Gerald, Matthew included in his brief in chief the same arguments concerning probation revocation as were contained in Steven's and Gabriel's briefs. Matthew was not on probation when the children's court ordered him detained on December 10, 2002; we therefore do not consider those arguments. In his brief,

Matthew does argue that he could only be detained if the criteria for detention were met under Section 32A–2–11; we do consider and now address that argument.

{44} As we concluded above, Subsections 32A–2–13(F) and (G) give the children's court authority to detain children who were adjudicated but not yet sentenced and who failed to comply with conditions of release. Nevertheless, conditions of release must be reasonably consistent with the criteria. Section 32A–2–13(F). Matthew's order of release, as we mentioned, contained conditions of release separate from the grade court conditions. Counsel did not specify in her objection to the children's court which, if any, of the conditions contained in the order of release did not accord with the criteria. On the basis of the objections to detention for not attending school and forging paperwork, we presume counsel objected to the conditions in the grade court order of school attendance and submitting paperwork from school. On appeal, Matthew makes the same argument.

{45} We note that Matthew did not object on December 10 to detention for violation of house arrest. House arrest was a condition contained in both Matthew's order of release and his grade court order. It is undisputed that Matthew violated that condition. We therefore find that the children's court was authorized under Section 32A–2–13(G) to detain Matthew for failure to comply with the condition. *See State v. Taylor*, 1999–NMCA–022, ¶ 17, 126 N.M. 569, 973 P.2d 246 ("A decision of the trial court will be upheld if it is right for any reason." (internal quotation marks and citation omitted)).

{46} Furthermore, as with Gerald, Matthew does not seek to be relieved of the plea agreement but only certain conditions of release. Matthew, after receiving the benefit of his plea agreement, may not now challenge the validity of certain conditions. *Cf. Trujillo*, 117 N.M. at 772, 877 P.2d at 578; *Herrera*, 2001–NMCA–073, ¶ 25; *Gibson*, 96 N.M. at 743, 634 P.2d at 1295. Once the conditions of release are set, the Code permits the children's court to return the child to detention for failure to conform to those conditions. *See* § 32A–2–13(G).

{47} In addition, as with Gerald, this Court does not have an adequate record to review the question as to whether grade court as a whole is "reasonably necessary and consistent with the criteria" for detention. Section 32A–2–13(F)(3). It is Matthew's burden to bring such a record to this Court. *See Drake*, 122 N.M. at 378, 924 P.2d at 1390.

{48} We conclude that the children's court had authority under Subsections 32A–2–13(F) and (G) to issue its December 10, 2002, order of detention.

## III. CONCLUSION

{49} For the reasons stated above, we affirm orders of detention entered by the children's court for Steven B., Gabriel C., Gerald L., and Matthew S.

{50} **IT IS SO ORDERED.**

WECHSLER, Chief Judge, concurs.

KENNEDY, Judge (specially concurring).

KENNEDY, Judge (specially concurring).

{51} This case speaks more to the consequences of failing to preserve issues at the trial level, than to the propriety of forming specialty courts. We should be mindful that children's court itself is a creature of statute, being created under the umbrella of Article VI, Sections 1 and 13, of the New Mexico Constitution, conferring jurisdiction on the district courts over "special cases and proceedings as may be conferred by law." NMSA 1978, § 32A–1–5 (1993); *see, e.g., In re Santillanes*, 47 N.M. 140, 138 P.2d 503 (1943) (holding that juvenile court is created by the legislature pursuant to Art. VI, § 13). The power to prescribe rules and procedures for the children's court has been given to the Supreme Court. Section 32A–1–5(B).

{52} The underlying issue for consideration is the process by which specialty/therapeutic courts (drug court, grade court, domestic violence court, homeless court) come to be, as mixing therapeutic goals with punitive measures are matters of broad policy and great political scope. Candace McCoy, *The Politics of Problem–Solving: An Overview of the Origins and Development of*

*Therapeutic Courts,* 40 Am.Crim. L.Rev. 1513–1534 (2003).

{53} In this case a relationship outside the court and the parties (State, parents, child) is established. For example, the grade court procedures notify children and parents that if grades drop, the parents may be required to attend school with their student/child. The parents agree to abide by this requirement—but by what authority can this bind a security-conscious school (and all schools are or should be these days) to allow the parents to be on school property or in class? Then, too, the culture of going along with court programs in the name of trying to fix problems may clash with prosecutors' duties to seek punitive sanctions for delinquent offenses, and defense counsel's burden of zealous representation. *See, e.g.,* Wendy N. Davis, *The Justice System Special Problems for Specialty Courts: Clients get Needed Treatment Rather than Jail Time, but Prosecutors and Defense Lawyers Alike Worry about Compromising their Roles as Advocates,* 89 A.B.A. J. 32–37 (Feb.2003).

{54} Here, we consider the children's court's coercive powers to enforce its orders in a vacuum-devoid of questions of inherent powers to create grade court, or whether the orders thus enforced were proper. Such questions, in a broad range, are crucial and primordial. The courts and legislature are in need of broader cooperation and coordination in the pursuit of alternatives to traditional criminal, mental health, juvenile, and other therapeutic solutions through the courts. I concur fully with the majority and only write separately to encourage a spirit of leadership and enterprise in generating solutions to what in this case is the elephant behind the door.