2007-NMCA-127

168 P.3d 750

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Frederick LUCERO, Defendant– Appellant.**

**No. 26,135.**

Court of Appeals of New Mexico.

July 31, 2007.

Certiorari Denied, No. 30,610, Sept. 17, 2007.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Warren F. Frost, P.C., Warren F. Frost, Logan, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} The opinion filed in this case on June 21, 2007 is hereby withdrawn and the following substituted therefor. The motion for rehearing is denied.

{2} This is an appeal from the district court's judgment in an on-record appeal from the Bernalillo County Metropolitan Court. We consider the preservation requirements in challenging procedures attached to a post-conviction domestic violence program of the metropolitan court. We also address notice issues involved in termination from the program. We hold that Defendant Frederick Lucero did not preserve for appellate review by this Court his challenges to procedural aspects of the program because he did not raise them in the metropolitan court. We further hold that, although the metropolitan court failed to provide proper notice to Defendant regarding evidence presented to the court relating to Defendant's termination from the program, or a hearing on the evidence, Defendant was not prejudiced. We therefore affirm the district court's judgment affirming the judgment and sentence of the metropolitan court.

## BACKGROUND

{3} Defendant was the subject of two criminal domestic violence complaints for violation of a protective order filed in metropolitan court. At arraignment, Defendant was ordered not to have contact with his ex-wife. The two cases were consolidated and assigned to Judge Cristina Jaramillo. Judge Jaramillo referred Defendant to the domestic violence early intervention program.

{4} At a hearing to determine if Defendant should remain in the program because of violations of the order not to have contact with his ex-wife, Defendant admitted making telephone calls to her. Judge Victoria Grant, the judge originally assigned to the other case consolidated before Judge Jaramillo, terminated Defendant from the program, and set the cases on the trial calendar. Judge Grant reiterated the no contact order and advised Defendant that he could be sent to jail if he violated it.

{5} Defendant then entered a plea and disposition agreement, agreeing to plead guilty to telephone harassment, with the remaining charges in the two complaints to be dismissed. At a hearing on the plea agreement, Judge Grant found Defendant guilty of telephone harassment and ordered a pre-sentence report. As a condition of release, she again ordered that Defendant have no contact with his ex-wife. At sentencing, on the recommendation of the court intervention program officer, Judge Grant referred Defendant to the new domestic violence repeat offender program. Defendant's attorney stated that neither he nor Defendant had any argument with the recommendation.

{6} Defendant complied with the requirements of the program for four months and advanced to the next phase of the program. However, fourteen days later, the court intervention program officer reported to Judge Sandra Clinton, the metropolitan court judge in charge of the domestic violence repeat offender program, that he had received an affidavit that morning from Defendant's ex-wife that Defendant had violated the no contact order by contacting his ex-wife and her ex-boyfriend. Defendant denied calling his ex-wife. Judge Clinton remanded Defendant to jail for four days for violating the order.

{7} Seven days later, on December 7, 2004, Defendant again appeared before Judge Clinton for his program review. The hearing was not recorded. Judge Clinton found that Defendant had violated the terms of the program and sentenced him for the charge of telephone harassment to 364 days in jail less credit for the four days he had served. She ordered Defendant to participate in the domestic violence repeat offender program offered in jail. The next day, Judge Clinton set a sentencing hearing for December 13, 2004. At that hearing, Judge Clinton explained that she erred when she sentenced Defendant at the program review on December 7 and that she should have remanded him and set the case for sentencing. Defendant's attorney believed that the judge's error was not a problem and had been corrected. Judge Clinton further explained that immediately after Defendant served the four days in jail, Defendant went to his ex-wife's house. The following night, he went to his ex-wife's ex-boyfriend's house, engaging in stalking behavior. Defendant's attorney requested that sentencing be continued until January, with Defendant in custody until after the holidays, to enable the attorney to pursue sentencing alternatives. Judge Clinton vacated her December 7 sentence and continued the hearing until January.

{8} Defendant then obtained additional counsel and changed his approach. He first filed a motion for immediate release on the ground that Defendant's case had been assigned to Judge Jaramillo, and Judge Clinton did not have authority to order Defendant incarcerated. Next, he requested that Judge Clinton recuse from the case, filing a notice of facts requiring recusal. Defendant asserted that recusal was required because, among other things, Judge Clinton had numerous ex parte communications with the court intervention program officer, mental health professionals associated with Defendant's program, and Defendant's ex-wife prior to sentencing Defendant and remanding Defendant to jail. Defendant further asserted that Judge Clinton acted without notice to Defendant, without the presence of Defendant's counsel, and despite the fact that she was not assigned to the case.

{9} Prior to sentencing at the hearing on January 12, 2005, Judge Clinton denied Defendant's request that she recuse. Judge Clinton reasoned, in part, that the program contemplates that she communicate with program staff, that she may have ex parte communication concerning conditions of release, that she disclosed her communication at the hearing on December 13, 2004, and that Defendant has the ability to subpoena witnesses for any hearing. At sentencing, Judge Clinton again expressed that she terminated Defendant from the program and noted that the case would be transferred back to Judge Jaramillo. Judge Clinton sentenced Defendant to 364 days in jail with credit for the four days already served with instruction that Defendant continue the domestic violence repeat offender program in jail.

{10} The district court then intervened. *See* Rule 7–106(G) NMRA (providing for district court review of a metropolitan court

judge's declining to recuse when a notice of facts requiring recusal has been filed). It held that Judge Clinton should have recused from the case because of the ex parte communication between Defendant's ex-wife and the program staff, including Judge Clinton. It remanded to the metropolitan court to the assigned sentencing judge for sentencing. In metropolitan court, Defendant filed three motions addressing Judge Clinton's sentence: a motion for credit for time served, a motion for release pending revocation hearing, and a motion to vacate sentencing. The motions all had the premise that Defendant served in the domestic violence repeat offender program as a condition of probation. Prior to her sentencing, Judge Grant denied Defendant's motions, concluding that Defendant was serving in a post-adjudication, pre-sentence program, and was not on probation. At the sentencing hearing, Defendant raised the additional argument that, by virtue of Judge Clinton's ex parte communication, all of Judge Clinton's actions were tainted, such that her termination of Defendant from the program was void. Judge Grant stated that she did not have the authority to address Judge Clinton's action because Judge Clinton was in charge of the program. Judge Grant sentenced Defendant to 364 days incarceration, granted him credit for sixty-two days served, and ordered him to pay a fine of $1000. Defendant appealed to the district court from the judgment and sentence.

{11} In the district court, Defendant argued that Judge Clinton violated Defendant's due process rights in her ex parte communication with Defendant's ex-wife and by terminating him from the domestic violence repeat offender program; that the metropolitan court lacked the statutory authority to institute a post-adjudicatory, pre-sentencing program instead of probation; that Defendant was entitled to credit for time served on probation in the early intervention and the domestic violence repeat offender programs; and that the metropolitan court erred in allowing a non-assigned judge to sentence Defendant over his objection. Although it entertained testimony, the district court affirmed the judgment and sentence of the metropolitan court based on the metropolitan court record. Defendant appeals to this Court from the district court judgment.

## ARGUMENTS ON APPEAL

{12} Defendant's arguments on appeal frame our analysis. They evolved in the course of briefing. In his brief in chief, Defendant argues that the metropolitan court lacked the authority to create a post-adjudication, pre-sentence program independent of placing Defendant on probation. As a consequence, Defendant contends that he was entitled to a probation revocation hearing before being incarcerated and terminated from the domestic violence repeat offender program. He further contends in his brief in chief that he was entitled to credit in sentencing for the time he served in the program because it was essentially probation.

{13} In its answer brief, the State counters that Defendant failed to preserve his arguments concerning the metropolitan court's lack of authority or the requirement for a probation violation hearing or other hearing on termination from the program. It argues that no credit for time served on probation was required because the metropolitan court did not place Defendant on probation.

{14} In reply, Defendant re-characterizes his arguments. He contends that he does not attack the authority of the metropolitan court to create the domestic violence repeat offender program. Instead, he argues that the metropolitan court could not terminate him from the program without affording him due process and that all of Judge Clinton's sentencing actions were void. As to his termination from the program, Defendant expands his argument to state that he was entitled to due process regardless of whether his participation in the program was as a condition of probation.

## LACK OF PRESERVATION OF CHALLENGE TO PROGRAM

 {15} Preservation plays an important role in the appellate review process. Argument of an issue to the lower court enables the party opposing the position advanced to marshal arguments to convince the court, permits the lower court to decide the issue and correct any mistakes with regard to it, and provides the record for an appellate

court to review and make an informed decision about the issue. *See State v. Joanna V.,* 2003–NMCA–100, ¶ 7, 134 N.M. 232, 75 P.3d 832, *affirmed on other grounds,* 2004–NMSC–024, 136 N.M. 40, 94 P.3d 783. As a consequence, we do not generally afford appellate review to issues that have not been raised to the lower court. *See, e.g., State v. Garcia,* 2005–NMCA–065, ¶ 6, 137 N.M. 583, 113 P.3d 406.

{16} Preservation issues arise with respect to alternative sentencing programs such as in this case because of the timing of the placement in a program. When a defendant has been convicted and there is the prospect of avoiding incarceration with the use of an alternative program, the defendant is frequently eager to participate in the program. At that time, the defendant does not have the impetus to challenge the program or its procedures. Later, if the program does not work out after the defendant has participated in it, and the defendant wishes to assert challenges, it may be too late to preserve the issues because the program has progressed or because the defendant has received the benefit of the program.

{17} We have addressed this type of issue in *Joanna V.* and *State v. Steven B.,* 2004–NMCA–086, 136 N.M. 111, 94 P.3d 854, both challenges to grade court programs. In *Joanna V.,* the respondent did not object to conditions of release that required school attendance, did not object to the requirements of the grade court program and its detention sanctions when the children's court explained them to her as part of the plea agreement, and did not object when the children's court again discussed the program at the final disposition hearing. *Joanna V.,* 2003–NMCA–100, ¶ 8, 134 N.M. 232, 75 P.3d 832. We held that the respondent did not preserve her subsequent challenge to her detention for violation of the program requirements. *Id.* ¶ 9. Similarly, in *Steven B.,* we held that the respondents could not argue due process issues on appeal that they did not raise below when responding to violations subjecting them to detention. *Steven B.,* 2004–NMCA–086, ¶¶ 5, 7, 136 N.M. 111, 94 P.3d 854.

{18} In this case, Defendant agreed to participate in the program and signed the program's forms explaining his conditions of release and sanctions for non-compliance. He voluntarily did so, because if Defendant successfully completed the program, he would receive credit for his time in the program and could avoid serving any time in jail. Defendant participated in the program for four months without difficulty. He did not object when, consistent with the sanctions for non-compliance form, Judge Clinton remanded him to jail for four days for violating the no contact order. If Defendant had made a timely objection to the metropolitan court's authority to create or carry out the program, Judge Grant, who referred Defendant to the program prior to sentencing, could have addressed the issue and made a ruling that could have corrected any error before Defendant participated in the program. *Cf. State v. Pacheco,* 2007–NMSC–009, ¶ 8, 141 N.M. 340, 155 P.3d 745 (stating that an objection "would have allowed the trial court to address the issue"). Defendant's participation in the program precluded his later objection to its structure. *See Joanna V.,* 2003–NMCA–100, ¶¶ 7–10, 134 N.M. 232, 75 P.3d 832.

## DEFENDANT'S DUE PROCESS CHALLENGES

{19} Similarly, Defendant did not make a timely objection concerning his entitlement to a probation revocation hearing before being incarcerated or terminated from the program. Judge Clinton incarcerated Defendant on November 30, 2004 for four days and again on December 7, 2004, when she terminated Defendant from the program and sentenced him on the telephone harassment charge. She corrected her order on December 13, 2004 to state that she remanded Defendant to jail, but set aside sentencing. Defendant appeared with his attorney on December 13, 2004, but did not argue that he had not violated the no contact order or raise the argument that he makes on appeal that he was not afforded due process rights that attach to probation revocation or otherwise. Defendant raised the issue before sentencing by Judge Grant. He filed a motion to vacate sentencing and argued the issue to Judge Grant.

{20} However, Judge Clinton's ex parte communication with Defendant's ex-wife prior to the November 30, 2004 incarceration clouds our preservation analysis. Defendant argues that all of Judge Clinton's subsequent actions in incarcerating Defendant and terminating him from the program should be considered void for purposes of review on appeal. While we do not take that view, we believe that the impact of Judge Clinton's communication requires that we analyze the merits of Defendant's due process claims along with our preservation review.

{21} Defendant claims that he was entitled to notice and a hearing prior to being incarcerated for violating the no contact order and prior to being terminated from the program. Defendant contends that Judge Clinton essentially revoked his probation by incarcerating and terminating him. According to Defendant, Judge Grant originally placed him on probation and established conditions of probation, entitling him to a probation revocation proceeding for an alleged violation.

{22} But Defendant was not on probation. As Judge Grant held in denying Defendant's motion to vacate sentencing, the program was "post-adjudication, pre-sentencing." She had referred Defendant to the program before sentencing him. She did not defer or suspend a sentence. From Defendant's perspective, he voluntarily participated in the program. He had the potential of avoiding jail time. He agreed to abide by the conditions of release established by the program, not as conditions of probation. The metropolitan court may set and enforce conditions of release pending sentencing. *See* Rules 7–402(B), 7–403 NMRA; *State v. Rivera*, 2003–NMCA–059, ¶ 20, 133 N.M. 571, 66 P.3d 344 (applying comparable district court rule and stating that conditions of release "are separate, coercive powers of a court," and are "enforceable by immediate arrest, revocation, or modification if violated"), *reversed on other grounds*, 2004–NMSC–001, 134 N.M. 768, 82 P.3d 939.

{23} Moreover, Defendant had a hearing on December 13, 2004 and could have addressed his incarceration. Significantly, he did not raise any argument that he was entitled to any additional process. He appeared with his attorney, who did not contest that Defendant violated the no contact order.

{24} Defendant would have us disregard that hearing because Judge Clinton presided, and she had had previous ex parte communication with Defendant's ex-wife. We note, as the district court concluded, the impropriety of the communication. Defendant's ex-wife had contacted the court intervention programs officer concerning contact by Defendant. She and others provided affidavits that were given to Judge Clinton. Defendant had the right to confront the complaining witness, his ex-wife, at a hearing before Judge Clinton to test the veracity of the complaint. *See State v. Phillips*, 2006–NMCA–001, ¶ 12, 138 N.M. 730, 126 P.3d 546, *cert. quashed*, 2006–NMCERT–009, 140 N.M. 543, 144 P.3d 102. Judge Clinton's communication with the witness tainted the appearance of propriety of that process. *See* Rule 21–200(A) NMRA ("A judge ... shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.").

{25} However, we see no prejudice to Defendant justifying reversal of the conclusions reached. *See State v. Padilla*, 1998–NMCA–088, ¶ 14, 125 N.M. 665, 964 P.2d 829 (requiring actual and substantial prejudice be shown in an appeal based on a confrontation clause violation). First, Defendant did not argue that Judge Clinton should not preside at the December 13, 2004 hearing. Second, although Defendant's brother and girlfriend made statements to the effect that Defendant did not violate the no contact order, Defendant did not raise the issue to the court.

{26} We also do not find merit in Defendant's claim that he was denied due process in connection with his termination from the program. First, Defendant did not preserve the issue. Judge Clinton terminated Defendant from the program at the December 7, 2004 hearing and reiterated her action at both the December 13, 2004 and January 12, 2004 hearings. As we have stated, Defendant did not argue that the metropolitan court did not afford him the requisite process. Second, even if we assume that Defendant preserved the argument, Defendant did

**626**

not contest his violation of the conditions. He was not prejudiced.

{27} For the same reason, we deny Defendant's motion for rehearing. In the motion, Defendant contends that he did not have access to the affidavits that Judge Clinton received as part of her ex parte communications and that he was not given the opportunity to respond to the allegations prior to his sentencing. However, Judge Clinton expressly stated at the December 13, 2007 hearing that she terminated Defendant from the program because Defendant had made telephone calls to his ex-wife and her ex-boyfriend and, immediately after his release from jail, again violated the no contact order by going to his ex-wife's house and by parking in front of her ex-boyfriend's house. Defendant did not contest these allegations or request a hearing to contest his violation of the no contact order.

## PROBATION SERVICE CREDIT

{28} Defendant lastly argues that he was entitled to credit against his sentence for his time in the program because it was time served on probation. As we have discussed, Judge Grant did not sentence Defendant when she referred him to the domestic violence repeat offender program, and Defendant was not on probation during his time in the program.

## CONCLUSION

{29} We affirm the judgment of the district court affirming the metropolitan court's judgment and sentence.

{30} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.