This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                            **No. 34,693**

**MARC BARRAZA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Mark A. Keller Law Office
Terri Keller
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

{1}    This appeal requires us to consider the enforceability of a plea agreement based on Defendant's admission to and successful completion of a drug court program when Defendant was terminated from the program.  It also asks us to consider whether the district court judge erred in refusing to recuse herself after she signed the order terminating Defendant from the program. Finding no error in the district court judge's denial of Defendant's motion to enforce the plea agreement and recusal motion, we affirm.

## I.    BACKGROUND

{2}    Pursuant to a plea agreement, Defendant pleaded no contest to one count of aggravated battery against a household member resulting in great bodily harm and one count of aggravated battery against a household member with a deadly weapon, both in violation of NMSA 1978, Section 30-3-16 (2008). The plea agreement contained a conditional sentencing agreement requiring Defendant to submit to a drug court screening. If he was accepted to the drug court program and successfully completed it, the State agreed to a suspended sentence with two years of supervised probation. If Defendant submitted to the screening but was "denied acceptance into the program for any reason except his willingness to take part in it," he must "request a status hearing on these matters within thirty days of his rejection" from the drug court program. If Defendant failed to submit to the screening, did not successfully complete

the drug court program, was rejected because he was unwilling to participate, or was rejected for another reason but did not request a status conference within thirty days of his rejection, his sentence was subject to an habitual enhancement on each charge and consecutive sentences, exposing him to a minimum of two years incarceration. The district court postponed sentencing pending the outcome of Defendant's drug court screening and continued Defendant's conditions of release, which prohibited Defendant, from among other things, committing any new crimes.

**{3}** One month later, Defendant was again charged with domestic violence against the same household member as a result of a new incident (the August charge), in violation of NMSA 1978, Section 30-3-12 (1995). The State filed an emergency motion to review conditions of release. In its motion, the State requested that the court order that Defendant have no contact with the victim household member. The State also asserted that the new charge constituted a violation of his conditions of release "because one of . . . Defendant's conditions of release is to not commit any new crimes." The State argued that the district court "may also need to consider whether this new alleged incident negates the sentencing agreement in the plea and disposition agreement[.]"

**{4}** The district court held a hearing on the motion. At the hearing, the parties focused on the dates and nature of Defendant's contact with the victim. The State

3

argued that "the plea agreement clearly states that any new violations of the law would negate [the] agreement, and picking up a new charge . . . is violation of the law." The State acknowledged that nothing in Defendant's conditions of release prohibited him from having contact with the victim, but argued that the additional charge constituted a violation of his conditions of release. Defense counsel responded that, as of the date of the hearing, Defendant was still involved in the drug court program and had not been found guilty of the August charge. A drug court officer testified that Defendant had been doing well in the program, but that if he had additional conditions of release, he would have to follow them. She stated, "We can keep him in [d]rug [c]ourt, but he cannot violate." The State requested that Defendant be sentenced to incarceration for a period of time. The district court remanded Defendant into custody, and set sentencing for October 2014.

{5}     Several days after remanding Defendant into custody, the district court issued an order finding that "Defendant has been UNSUCCESSFULLY terminated from the [d]rug [c]ourt [p]rogram[,]" after having received notice from drug court personnel of Defendant's termination from the program. The district court again postponed Defendant's sentencing pending resolution of the August charge. At trial, a jury acquitted Defendant of the August charge. Following his acquittal, Defendant filed a motion to enforce the plea agreement. In his motion, Defendant argued that he was not

*rejected* from the drug court program, that the district court had actually *terminated* him upon learning of the August charge; and, termination and rejection have different meanings in the context of drug court involvement. Defendant argued that, because he was not rejected from the program, he remained entitled to the benefits of the plea agreement.

{6}  Defendant also filed a motion requesting that the district court judge in the case recuse herself. Defendant asserted that the judge was influenced by representations made by the State and recitations given by the victim that were irrelevant to an interpretation of the contractual language contained in the plea agreement. Defendant also contended that the report of his termination from the drug court program and subsequent order noting that he was "UNSUCCESSFULLY terminated," which was signed by the district court judge, was improper. As support for this assertion, Defendant pointed to e-mail messages from a drug court officer, in which the officer stated that she had spoken to the judge and informed the judge that Defendant was "clearly not appropriate" for the program, that he was "at too high of a risk to violently reoffend," and that he would not be allowed back into the program.

{7}  The district court held a hearing on the motions to recuse and to enforce the plea in February 2015. In response to Defendant's request for recusal, the district court clarified that although the judge had signed the order terminating Defendant

from the drug court program, she was covering for another judge at the time, and it was drug court officials who made the decision to terminate. Further, the district court judge explained that she harbored no ill-will towards Defendant, she was involved with the program only to cover for another judge on staffing matters, and that she had approached the drug court officials to ascertain whether Defendant could be reconsidered for the program. There was also testimony from a drug court officer that the district court judge had nothing to do with the decision that Defendant was "not an appropriate candidate" for the drug court program. According to the officer, the district court judge's only involvement in Defendant's termination was her signing the order of termination. The district court denied Defendant's motion to recuse.

{8}     The district court next turned to Defendant's motion to enforce the plea agreement. Defendant again submitted to the court that "termination" and "rejection," considered in the context of the drug court program, had different meanings, and that because he had been acquitted of the August charge, there had been no violation of the law. The district court declined the parties' invitation to argue over semantics by stating that, while rejected and terminated could have different meanings, rejected "also means to discard unsatisfactorily" and that seems to be just what had happened to Defendant. The district court postponed addressing sentencing matters until it had reviewed a transcript of the change of plea hearing, intending to review just what

6

Defendant could have understood as far as any distinction between the term "reject" versus "terminate."

{9}     At sentencing, and in accordance with the terms of the plea agreement, the State filed a supplemental information the day of the hearing, seeking to enhance Defendant's sentence pursuant to NMSA 1978, Section 31-18-17(D) (2003). The district court considered Defendant's understanding of the plea agreement at the time he entered his no contest plea. The district court opined that the term "rejection" meant never being allowed into the program, while "termination" meant being thrown out of or not allowed to continue the program. The court summarized its position by stating that Defendant "was accepted into [d]rug [c]ourt, he did not successfully complete [d]rug [c]ourt, and by the terms of [the plea] agreement that he entered into on that date, we would come back here for sentencing." After receiving clarification from the drug court officer that Defendant was terminated from the program because of his continued criminal behavior and Adderall addiction, the district court moved on to sentencing. The State asked that Defendant be sentenced to eight years. The district court sentenced Defendant to eight years, two of which were suspended, plus an eight-month credit for time served. Defendant appealed.

**II.     DISCUSSION**

{10} On appeal, Defendant asserts error in the denial of his motion to enforce the plea agreement and the denial of his motion for recusal. Regarding the denial of his motion to enforce the plea agreement, Defendant makes three assertions. First, Defendant insists that the language of the plea agreement gave rise to a reasonable understanding that without committing a violation of any kind, he would be kept in the drug court program. Second, Defendant argues that, because he did not violate any conditions of the plea agreement, the drug court, or the district court, his termination from drug court was improper. Finally, Defendant contends that his termination from the drug court program violated his due process rights.

{11} Defendant repeatedly contends that he was acquitted of the August charge and that, therefore, there was no violation of law to support the district court's refusal to enforce the plea agreement. Because we conclude that the district court's refusal to enforce the agreement was based on Defendant's failure to complete the drug court program, we need not address his acquittal of the August charge.

**A.    Standard of Review**

{12} The terms of a plea agreement "must be interpreted, understood, and approved by the [district] court." *State v. Mares*, 1994-NMSC-123, ¶ 12, 119 N.M. 48, 888 P.2d 930. Appellate courts review the unambiguous terms of a plea agreement "according to what [a d]efendant reasonably understood when he entered the plea." *State v.*

*Miller*, 2013-NMSC-048, ¶ 9, 314 P.3d 655 (internal quotation marks and citation omitted). We have said that "[a] plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court." *State v. Gomez*, 2011-NMCA-120, ¶ 9, 267 P.3d 831. Thus, if the language in the written agreement is ambiguous, it is the district court's task to resolve that ambiguity with the parties. *Id.* If the court resolved the ambiguity, the agreement can no longer be said to be ambiguous as to that point. *Id.* On the other hand, if the district court failed to resolve the ambiguity and there is no presentation of extrinsic evidence that would resolve it, then we "may rely on the rules of construction, construing any ambiguity in favor of the defendant. Under such circumstances, we review the terms of the plea agreement de novo." *Id.* (internal quotation marks and citation omitted).

**1.      Defendant Did Not Successfully Complete the Drug Court Program**

{13}      The plea agreement in this case sets forth that if Defendant "gets accepted and successfully completes drug court," the State agrees to a suspended sentence and two years of supervised probation for Defendant. If Defendant attempts to become involved in the program, but is unable to do so because he "is denied acceptance into the program for any reason except his willingness to take part in it," he was entitled to "request a status hearing on these matters within thirty (30) days of his rejection from [d]rug [c]ourt" and may still be eligible to reap the benefits of the plea

9

agreement. The plea agreement states, however, that "there will be no agreements on the underlying sentence" if Defendant "*does not successfully complete drug court* or is rejected because he is not willing to take part in the program at the screening, or he is rejected for another reason but does not request a status conference within thirty (30) days of his rejection from drug court[.]" (Emphasis added.) As written, there is no ambiguity as to the circumstances that subject Defendant to a minimum of two years, and a maximum of eight years, incarceration.

{14} Defendant argued to the district court that termination and rejection are not the same in the context of drug court. On appeal, Defendant contends that because the drug court terminated him after originally accepting him and then reconsidering its original decision, that termination "should have been considered a 'rejection' beyond Defendant's control and Defendant should have been allowed to enter into another program as contemplated by . . . the language of the plea." The sentencing agreement is silent as to what would happen in the event Defendant was rejected from the drug court program and requested a status conference hearing within thirty days. The plea agreement contains no language that gives Defendant the right to enter another program; and, even if it did, Defendant failed to request a hearing within thirty days, as required by the agreement. Thus, even if Defendant's interpretation of the plea

agreement is correct, he failed to comply with the requirements that would trigger those rights under the plea agreement.

{15} The plea agreement states that there are no agreements on the underlying sentence if Defendant "does not successfully complete drug court[.]" The State made it clear during the change of plea hearing that, "if [Defendant] gets into [d]rug [c]ourt but does not complete it, then . . . the State will impose habitual offender on each charge and [Defendant] will be subject to a minimum of two years and maximum of eight years of incarceration." Indeed, the district court pointed out the clarity of the plea agreement's language during the sentencing hearing in March:

> I'm not getting into an argument whether rejection versus termination is part of this agreement. . . . So I'm not going to get into this back-and-forth again, rejection versus termination versus nonaccepted versus being thrown out. He was accepted into [d]rug [c]ourt, he did not successfully complete [d]rug [c]ourt, and by the terms of this agreement that he entered into on that date, we would come back here for sentencing. . . . [T]here was no indication that [Defendant] did not understand what would happen if he did not successfully complete [d]rug [c]ourt.

The language of the plea agreement is both clear and unambiguous; if Defendant, for any reason, failed to complete the program, he would lose the benefit of the sentencing agreement. Defendant did not complete the drug court program. Therefore, under the terms of the plea agreement, he was not entitled to enforcement of the

11

sentencing agreement in the plea agreement. It was not error for the district court to deny Defendant's motion to enforce the terms of the plea agreement.

**B.       Violation of Defendant's Right to Due Process**

{16}     Defendant argues that because he did not violate any condition in the plea agreement, any condition of the drug court, or any condition of the district court, that his termination from the drug court program violated his due process rights. Defendant states that "[i]t is a denial of due process to allow . . . Defendant to be accepted into the [drug c]ourt [p]rogram but then later after acceptance and while Defendant is in compliance with all conditions, for [d]rug [c]ourt to reconsider their original decision and terminate him[.]"

{17}     In support of his claim that defendants have a due process right to contest termination from a court program, Defendant cites *State v. Lucero*, 2007-NMCA-127, 142 N.M. 620, 168 P.3d 750. The defendant in *Lucero* twice violated a no contact order and was terminated from a domestic violence intervention program. He asserted on appeal that due process entitled him to a hearing akin to a probation revocation hearing before termination from the program. We held that notice and hearing procedures required in probation revocation proceedings do not necessarily apply to a termination from a voluntary, post-adjudication program offered prior to sentencing, but we did not analyze whether due process protections applied to someone in the

12

defendant's position because the defendant had not preserved the issue for appellate review. *Id.* ¶ 26.

{18} Despite his reliance on *Lucero*, it does not support Defendant's assertion that "[a] defendant has a due process right to contest his termination from the [drug court] program," which includes a hearing similar to that of a probation revocation hearing. We agree with Defendant that probation revocation hearings are intended to afford a defendant "minimum due process rights to ensure that [the defendant] is heard and that the facts underlying the alleged probation violation are evaluated." *State v. Leon*, 2013-NMCA-011, ¶ 17, 292 P.3d 493 (internal quotation marks and citation omitted). As we noted, but did not decide in *Lucero*, the notice and hearing requirements prior to probation revocation may not apply to termination from a voluntary post-adjudication program, such as drug court. 2007-NMCA-127, ¶¶ 21, 26. However, even if they did, those requirements were satisfied in this case. Prior to sentencing, Defendant had two separate hearings at which he had the opportunity to introduce evidence and testimony setting out his version of events leading up to his termination. He had an opportunity to provide the district court with details of his compliance with the program up to that point, as well as the suitability of his participation in the program. He had an opportunity to litigate the propriety of his termination from the program before a determination was made by the metropolitan court on the August

charge. The record indicates that an officer from the drug court program was present and testified at each of Defendant's hearings, allowing Defendant to confront the witnesses against him. *See Lucero*, 2007-NMCA-127, ¶¶ 24-25.

{19}     At the hearing on Defendant's motion to enforce the plea and to recuse the judge, the drug court supervisor appeared and advised the district court that Defendant had been terminated from drug court for three reasons: (1) he had not had recent substance abuse issues; (2) he had an Adderall addiction, which the drug court could not monitor; and (3) he picked up a new charge and exhibited violent behavior against the same victim. For these reasons, the drug court concluded that Defendant was not an appropriate candidate for the program. Defense counsel took the opportunity given by the district court to question the drug court supervisor. Additionally, during a hearing on August 21, 2014—before Defendant was terminated from the program—the victim gave a statement in open court about the events resulting in the August charge with the State, defense counsel, and Defendant present. Defense counsel did not make any argument in response to the victim's statements, nor did she pose any questions for the victim to answer.

{20}     We therefore disagree with Defendant's assertion that he was denied due process on his drug court termination. The district court considered the testimony and evidence offered by both Defendant and the State in three separate hearings—one

14

prior to termination and two following termination, but prior to sentencing—before rejecting Defendant's motion to enforce the plea agreement and sentencing Defendant. We conclude that Defendant was afforded ample opportunity to be heard and to challenge the evidence against him. Moreover, Defendant did not request any additional process during any hearings before the district court, *see id.* ¶¶ 23, 26, and failed to avail himself of his right to request a status hearing within thirty days of being terminated from the drug court program where, Defendant contends, he "should have been allowed to enter into another program as contemplated by the parties[.]" Defendant provides us with no statutory or common law authority that imposes an additional obligation upon the State or the district court to afford Defendant yet another hearing to address his termination from the drug court program. *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (stating the rule that appellate courts will not consider an issue if no authority is cited in support of the issue and that, when given no cited authority, we assume no such authority exists). We therefore conclude that Defendant's due process rights were not violated when he was terminated from the drug court program. He was given more than one hearing between his termination and his sentencing, and he did not avail himself of another hearing.

**C.    Recusal**

{21} We now turn to Defendant's argument that the district court judge should have recused herself from the case. We review the district court's decision on a motion to recuse for an abuse of discretion. *State v. Ruiz*, 2007-NMCA-014, ¶ 13, 141 N.M. 53, 150 P.3d 1003. A judge must exercise his or her judicial function "[e]xcept in those cases where a judge's impartiality might be reasonably questioned[.]" *State v. Cherryhomes*, 1992-NMCA-111, ¶ 21, 114 N.M. 495, 840 P.2d 1261 (internal quotation marks and citation omitted). "In order to require recusal, bias must be of a personal nature against the party seeking recusal. Personal bias cannot be inferred from an adverse ruling or the enforcement of the rules of criminal procedure." *State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312 (citation omitted). Such bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Ruiz*, 2007-NMCA-014, ¶ 15 (internal quotation marks and citation omitted). Rule 5-106(H) NMRA prohibits judges from sitting on a case where their impartiality may reasonably be questioned under the Constitution of New Mexico or the Code of Judicial Conduct. The Code of Judicial Conduct requires a judge to disqualify himself or herself where the judge's "impartiality might reasonably be questioned." Rule 21-211(A) NMRA; *see also* Rule 21-100 NMRA (stating that a judge shall "promote the

16

independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety"); Rule 21-102 NMRA (same).

{22}   Defendant asserts that our Supreme Court's reliance in *Miller*, 2013-NMSC-048, ¶ 29, on the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257 (1971), supports the proposition that a case remanded for enforcement of plea terms requires a different sentencing judge. We disagree. In *Santobello*, the United States Supreme Court remanded a case back to a state court to decide whether it was more appropriate to award specific performance of the plea agreement through a new sentencing judge or to allow the defendant to withdraw his plea altogether. *Id.* at 262-63. The Court took time to emphasize, however, that it meant "in no sense to question the fairness of the sentencing judge." *Id.* at 263. We are therefore unpersuaded by Defendant's suggestion that *Miller*, which does not address recusal or judicial bias at all, but deals with interpretation of a plea agreement's terms, requires recusal of the original sentencing judge where a defendant requests specific performance of a plea agreement.

{23}   Defendant also suggests that, because the district court judge signed the order terminating Defendant from drug court, she "had discussions with [d]rug [c]ourt outside the presence of Defendant" that mandate recusal. We remain unpersuaded. During the February hearing, the district court judge explained away any appearance

of impropriety through her own explanations and the testimony of a drug court officer. The district court judge acknowledged making inquiries as to whether Defendant could continue in the program and also made it abundantly clear that her involvement with drug court was temporary and administrative. The drug court officer confirmed that the drug court had terminated Defendant from the program. Defendant does not point to any extrajudicial source that somehow altered the district court judge's decision in this case. *Ruiz*, 2007-NMCA-014, ¶ 15. Seeing no abuse of discretion in the district court's denial of Defendant's motion to recuse the district court judge, we affirm.

## III. CONCLUSION

{24}    The district court properly denied Defendant's request to enforce the sentencing agreement contained therein. Further, the district court judge did not abuse her discretion when she denied Defendant's motion to recuse herself. We therefore affirm the district court.

{25}    **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**

18

_____

**LINDA M. VANZI, Chief Judge**


_____

**JAMES J. WECHSLER, Judge**